# EXHIBIT 1

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

SEP 09 2019

DAVID H. YAMASAKI, Clerk of the Court

BY: J. Garcia, DEPUTY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
U.S. BANK TRUST, N.A., as TRUSTEE for LSF9 MASTER PARTICIPATION TRUST; CALIBER HOME LOANS, INC.; AND DOES 1 THROUGH 10, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DOO M. KO

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California, County of Orange 700 W. Civic Center Dr., Santa Ana, CA 92701 | CASE NUMBER: *(Número del Caso):* **01 1 0 3 2 8 2** |

**JUDGE WALTER P. SCHWARM**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Doo M. Ko, 2244 Shapiro St., Fullerton, CA 92833

DATE: *(Fecha)* OCT 09 2019   **DAVID H. YAMASAKI**   Clerk, by *(Secretario)* Jennifer Garcia , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [✓] on behalf of *(specify):* Caliber Home Loans, Inc.
   under: [✓] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [✓] by personal delivery on *(date)* 10/10/19   02:27 PM .

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Doo M. Ko
2244 Shapiro St.
Fullerton, CA 92833

*Plaintiff, In Pro Per*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

SEP 09 2019

DAVID H. YAMASAKI, Clerk of the Court

BY:_____DEPUTY

SUPERIOR COURT OF CALIFORNIA
FOR THE COUNTY OF ORANGE-CENTRAL JUSTICE CENTER

| | |
|---|---|
| DOO M. KO, | Case No. **30-2019** |
| *Plaintiff,* | **01 1 03 282** |
| vs. | 1. WRONGFUL FORECLOSURE |
| | 2. FRAUD |
| | 3. INJUNCTIVE RELIEF |
| U.S. BANK TRUST, N.A., as TRUSTEE for | 4. TEMPORARY RESTRAING ORDER, PRELIMINARY AND PERMANENT INJUCTION; |
| LSF9 MASTER PARTICIPATION TRUST ; | |
| CALIBER HOME LOANS, INC.; AND | 5. DECLARATORY RELIEF |
| DOES 1 THROUGH 10, INCLUSIVE, | 6. VIOLATION IF BUSINESS AND PROFESSION CODE SECTION 17200 |
| *Defendant* | 7. WRONGFUL EVICTION |
| | DEMAND FOR JURY TRIAL |
| | JUDGE WALTER P. SCHWARM |

Plaintiff Doo Ko complains and alleges the follows:

## JURISDICTION AND VENUE

The property at issue located in the County of Orange, State of California.

The property is located at

2244 Shapiro St.

Fullerton, CA 92833

A.P.N. 280-331-67 (See Exhibit 1 Legal Description)

The value of the property exceeds $25,000. Therefore, this court is proper venue.

## PARTIES TO ACTION

1. Plaintiff Doo M. Ko ("Ko") is, and at all times mentioned herein was, an individual residing in the State of California, County of Orange, and is the sole current record owner of the Property, a single family residence, the Subject Property is Plaintiff's primary residence and owner-occupied.

2. Defendant Caliber Home Loans, Inc. ("Caliber") is, and at all times mentioned herein was, a corporation organized and existing under and pursuant to the laws of the State of Delaware, and doing business in Orange County, California. Based upon information and belief, Caliber's principal place of business is located in Irving, Texas. Caliber was the loan servicer on the mortgage loan and during said time period was acting at the request and on behalf of Defendants U.S. Bank Trust, N.A. and the LSF9 Master Participation Trust.

3. Defendant U.S. Bank Trust N.A., as Trustee for LSF9 Master Participation Trust ("U.S. Bank") is and at all times herein mentioned was an organization of unknown type doing business in Orange County, California. Based upon information and belief, U.S. Bank's

principal place of business is St. Paul, Minnesota or Delaware. On Plaintiffs' information and belief during the acts complained of herein Defendant U.S. Bank was acting as Trustee for and on behalf of the LSF9 Master Participation Trust and engaged Defendant Caliber to service the loan at their request, on their behalf, and under their instruction and direction.

4. Plaintiffs do not know the true names and capacities of the defendants sued herein as DOES 1 through 10 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiffs are informed and believe and based on such information and belief allege that each of the DOE Defendant is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

5. Plaintiffs are informed and believe and based on such information and belief allege that Defendants Caliber, U.S. Bank, Ocwen, and DOES Defendants 1 through 10, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein. Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

**NATURE OF THE CASE**

6. The claims set forth in this Complaint seek to redress Defendants' knowing and serial failures to adhere to the express requirements of law.

7. The claims further seek to redress Defendants' knowing use of deficient and inaccurate Certificates of Compliance, a required condition precedent under California Civil Code section 2923.55 to the recording of Notices of Default on Doo Ko's home and the subsequent foreclosure on such properties based on the invalidly recorded Notices of Default.

8. The claims seek to redress Defendants' knowing and serial failures to acknowledge or to respond, either timely or in some instances at all, to qualified written requests submitted to them by Plaintiff Doo Ko. Defendants further failed to provide required notices to Plaintiff upon servicing or ownership transfers notices that are required under law.

9. The individual claims set forth in this Complaint seek to redress violations of law for and related to (1) the wrongful filing and recording of a 2017 Notice of Default ("NOD") and 2017 Notice of Trustee's Sale against Doo Ko's home and through such filing the initiation of nonjudicial foreclosure against his property by persons or entities lacking standing to assert such claims; (2) the wrongful attempt to collect monies on a mortgage debt that the parties seeking to collect do not own and which cannot be validated or substantiated in terms of the nature, extent, or amount of the debt; (3) Defendants' knowing and repeated failure to timely provide Plaintiffs specific documentation substantiating their standing to initiate a non-judicial foreclosure, as well as their ability to validate the amount of mortgage debt allegedly owed under the mortgage loan; (4) the apparent fabrication and forgery of documents upon which Defendants now rely for the authority to act; and (5) the wrongful attempt to assert an invalid ownership interest in contravention of Doo Ko's clear title.

## FACTUAL ALLEGATIONS AND BACKGROUND

### CORE FACTS AND ARGUMENTS

10. The recent Trustee's Deed Upon Sale is dated after the last case was already filed and/or finished. Therefore, the allegation in this new case are different and outside of the scope of Res Judicata.

11. Secondly, the signers on Assignment of Deed of Trust(2015, 2016), Substitution of Trustee (2016), Notice of Trustee's Sale(2017) and Trustee's Deed Upon Sale (2017) were not signed by an Officer for the Corporate Entity. An Employee or person holding a purported Power of Attorney for a Corporation cannot sign Real Estate Documents, unless he or she is also a corporate officer. Although the Documents may appear valid on their face. The signature are void, because persons who signed the above stated documents did not have the legal capacity to sign them. Therefore, they are void documents.

12. Defendants are lacking possession of requisite legally enforceable, recorded assignments, and Defendants are unable to verify and demonstrate the chain of ownership and assignment of the mortgages from the actual mortgagee. Further, Defendants are lacking sufficient evidence to support the claims of a default. Thus, Defendants' pattern and practice of filing foreclosure actions in state and federal courts while clearly lacking the right to do so is a clear violation of Plaintiff's rights.

### BACKGROUND HISTORY

13. Since 2013, the California Homeowner Bill of Rights ("HBOR") has placed on entities initiating non-judicial foreclosure proceedings, including the filing and recording of a NOD in the property records, certain affirmative obligations aimed at protecting homeowners. One such obligation is to verify their standing and legal authority to initiate and record the NOD,

taking care to review evidence supporting their ability to take such action and formally recording a NOD only after completing a review of competent and reliable evidence which supports the veracity of that authority. Defendants sued herein failed to meet these obligations.

14. To record a NOD as a predicate to instituting a non-judicial foreclosure in California, the foreclosing party (usually a bank or similar entity) must, at the time it records the NOD, validly hold the mortgage note and the beneficial interest under the deed of trust. If the entity does not hold such ownership interest, any recording of the NOD is invalid. In this case, Defendant Caliber, presumably at the request and direction of Defendants(themselves acting on behalf of Defendant U.S. Bank Trust), recorded a NOD(May 2017) on Doo Ko's home as the first step towards carrying out a non-judicial foreclosure. As will be discussed herein, Caliber did this even though U.S. Bank Trust did not have the legal standing or authority to do so because U.S. Bank Trust did not own the loan at the time Caliber recorded the NOD(May 2017).

15. Defendant U.S. Bank Trust held itself out as the owner of the underlying Promissory Note and the holder of the beneficial interest under the deed of trust. Ostensibly, it held the interest by virtue of assignments of the original Promissory Note and Deed of Trust from the original lenders. In truth, U.S. Bank Trust was not the owner of or in possession of the Promissory Note or a holder of the beneficial interest under Plaintiffs' deed of trust because the Promissory Note and Deed of Trust, and accordingly the beneficial interest under such instruments were never properly or legally transferred from the original lender to U.S. Bank Trust.

16. Moreover, Defendant Caliber, as servicer of the loan and acting as the agent for and at the behest of Defendant U.S. Bank Trust, had an affirmative duty and obligation under the law to

independently review competent and reliable evidence (including at a minimum the Note and Deed of Trust Assignment and Endorsement Chain, as well as the mortgage loan file received from prior loan servicers) to ensure that U.S. Bank Trust was, in fact, the valid legal owner and thus entitled to direct them to actually record the NOD. Such review, which U.S. Bank Trust should have insisted upon, would have revealed that there were significant gaps and discrepancies in the respective Note and Deed of Trust Assignment and Note Endorsement chains of title, and, as a result, that real questions existed as to whether or not the U.S. Bank Trust was, in fact, the valid owner of the underlying Promissory Note and the holder of the beneficial interests at the time the NOD was recorded and at the time the Notice of Trustee's Sale was issued.

17. Indeed, prior to the NOD recording, Defendant Caliber had been put on notice, both by a review of the loan file received from the prior loan servicer as well as by repeated communications with Plaintiffs' representative, of the existence of serious gaps and deficiencies in the chain of title of the loan (information that U.S. Bank as well as U.S. Bank Trust had either actual or constructive notice of) and that, as a result, there were serious questions as to who actually owned the loan.

18. Upon this servicing transfer, Plaintiffs' representative contacted Defendant Caliber, alerted them to the chain of title problems, and urged Caliber to exercise restraint in reinitiating any non-judicial foreclosure actions against the property considering the serious title issues presented. On Plaintiffs' information and belief, Caliber advised U.S. Bank Trust of these communications. Plaintiffs, as was their statutory right, also requested that Defendant Caliber provide documents substantiating the legal ownership by U.S. Bank Trust of the Note and Deed of Trust, including the Note and Deed of Trust Assignment and Endorsement Chain on

the loan -- a request that Caliber only partially complied with and not within the time limits imposed by law, in violation of the provisions of the Real Estate Law. Eventually Caliber conceded this failure in writing.

19. Caliber employee admitted, that it too had found gaps in the documented chain of title, but remarkably advised that it intended to "recreate" endorsement chains and "corrective" assignments to fill in the acknowledged gaps. With full knowledge of these legal deficiencies and the absence of competent and reliable evidence of the legal authority of U.S. Bank Trust or their representative Defendant U.S. Bank to do so, Caliber still proceeded to record a NOD (May 2017) on Doo Ko's home and to issue a Notice of Trustee's Sale.

20. Additionally, Caliber had the wrong party execute the Certificate of Compliance required under Civil Code 2923.55, and the trustee representing the purported owner nevertheless attested to its accuracy despite the error being readily apparent on the face of the document. Compliance with the provisions of Civil Code 2923.55 is a pre-requisite to the ability to record a NOD, thus this failure to comply rendered such recording void and invalid. Caliber's knowing and intentional actions go far beyond simple negligence. Caliber abrogated and rejected its affirmative obligations under law. In failing to fulfill and discharge their statutory obligations, Defendants violated the HBOR and subjected Doo Ko to the wrongful recording of a NOD(May 2017) on his home, the issuance of a baseless Notice of Trustee's Sale and thus the wrongful initiation of a non-judicial foreclosure.

21. Further, because the mortgage loan was not owned by U.S. Bank Trust, Defendants Caliber and U.S. Bank Trust lacked the legal authority to collect on the alleged debt. Nevertheless, they continued to send mortgage statements to Plaintiffs to collect on a debt not owed to U.S.

Bank Trust. Caliber also sought to collect on a debt it could not validate, nor could it ascertain how much was supposedly owed.

22. Under said debt, as it conceded in writing that it lacked a full and complete payment history on the loan (documentation needed for Caliber, and U.S. Bank Trust validate the amount of the alleged debt). Rather, Caliber relied on what it had received (albeit incomplete) from the prior servicer, Ocwen. Caliber then, despite acknowledging that there were unexplained financial discrepancies in the debt validation statements, mortgage statements and other demands for payment it had sent to Plaintiffs on behalf of Defendant U.S. Bank Trust, nevertheless attempted to collect the debt as if it had the authority to do so and as if the amount was validated and undisputed. These actions violated California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act")

23. Finally, in reliance on flawed and inconsistent chain of title documents as well as deceptive and imaginatively created (if not outright fraudulently manufactured) documents, Defendants slandered Doo Ko's title to his home and seek to impose a superior ownership in contravention of his clear title to the property. This too is improper.

## STATEMENT OF FACTS

24. Plaintiff is owner home located at 2244 Shapiro St., Fullerton, CA 92833. Doo Ko purchased above property on or about July 2, 2007 as instrument 2007000427193, of official records in the Office of Recorder of Orange County. Plaintiff obtained a mortgage from Bank of America, N.A.("BOA") The loan was evidenced by a promissory note and secured by a Deed of Trust for the real property at 2244 Shapiro St., Fullerton, CA 92833 ("Property"). Exhibit 2

25. On March 5, 2010, a Notice of Default("NOD") was recorded against the property. On April 5, 2010, a Substitution of Trustee was recorded ("2010 Substitution of Trustee"). On June 15, 2010 and February 21, 2012, a Notice of Trustee's Sale was recorded against the property. On May 9, 2013, a Notice of Rescission of First NOD was recorded against the property.

26. On May 27, 2014 and July 10, 2014, an Assignment of Deed of Trust and Corrective Assignment of Deed of Trust were recorded. See Exhibit 3 & Exhibit 4. On October 14, 2014, a Substitution of Trustee (to Western Progressive LLC) was recorded. See Exhibit 5. On November 21, 2014, a Second Notice of Default("NOD") was recorded against the property. See Exhibit 6. On April 8, 2015, a Notice of Trustee's Sale was recorded against the property. In California, a Notice of Default does not expire. The Notice of Default would be active until a Notice of Rescission or a Reconveyance is recorded. Notice of Rescission of Second NOD was not recorded against the property until Trustee's Sale. Since NOD(November 2014) is valid, Defendants and/or DOES 1-10 failed to recorded Notice of Rescission of NOD (November 2014), thus NOD (May 2017) is void therefore foreclosure sale in 2017 was invalid and void. Plaintiff alleges NOD(11/21/2014) is still valid, Plaintiff alleges Defendants and/or DOES 1-10 failed to recorded Notice of Rescission of 2014 NOD, therefore NOD (May 2017) was void and Trustee's Sale in 2017 was Void. Thus Trustee's Deed Upon Sale (TDUS) in 2017 was void.

27. On April 16, 2015, an Assignment of Deed of Trust was recorded. Exhibit 7. On October 7, 2016, an Assignment of Deed of Trust was recorded. Exhibit 8.

28. On November 1, 2016, a Substitution of Trustee was recorded("2016 Substitution of Trustee"). Exhibit 9.

29. On or about May 11, 2017, Plaintiff sent Loan Modification Application to Caliber.

30. On or about May 17, 2017a Notice of Default("NOD") was recorded against the property. See Exhibit 10.

31. On or about August 22, 2017, a Notice of Trustee's Sale was recorded against the property. See Exhibit 11

32. On or about August 25, 2017, Plaintiff contacted Caliber. Plaintiff was told that there would be no foreclosure sale, because Plaintiff was in a loan modification review. Notwithstanding, Defendants scheduled sale Plaintiff's home on September 25, 2017.

33. Doo Ko filed suit on September 25, 2017 to prevent the loss of his home at a foreclosure sale.

34. On October 4, 2017, a Trustee's Deed Upon Sale was recorded. See Exhibit 12.

35. In October 2017, Plaintiff contacted Quality Loan and told Sale was void. Plaintiff requested Rescission of TDUS.

36. On or about October 30, 2017, Caliber and U.S. Bank Stated Plaintiff's Property "No Trustee's Sale has been taken place."

37. On or about November 1, 2017, Plaintiff also spoke with Desmond(Caliber Employee #28280). Desmond also stated that there's No foreclosure sale has taken place.

38. On or about November 9, 2017, Plaintiff contacted Quality Loan and notified pending lawsuit

39. Plaintiff also told Quality that Caliber and U.S. Bank Stated "No Trustee's Sale has been taken place". Quality said there's a mistake regarding foreclosure. Quality finally told Plaintiff Trustee's Sale will be reversed. So Plaintiff filed a Notice of Voluntary Dismissal against Caliber and U.S. Bank Trust on 11/14/2017. On December 27, 2017, Plaintiff filed a Notice of Dismissal and Entire Lawsuit was dismissed without Prejudice.

40. In May 2018, Plaintiff contacted Caliber to check Plaintiff's Status of the Loan. But Caliber Representative Ty said Plaintiff property is in reviewing and processing to transfer to REO Department from Caliber's Loss Mitigation department.

41. Plaintiff was waiting for Rescission of Trustee's Sale. Plaintiff discovered Notice of Rescission of TDUS was not recorded.

42. On or about May 17, 2018, Plaintiff sent a letter to Caliber. Plaintiff requested reverse sale as soon as possible. However, on or about August 20, 2018, U.S. Bank trust filed an unlawful detainer against Plaintiff and other tenants. U.S. Bank Trust filed an unlawful detainer in bad faith. U.S. Bank Trust knew foreclosure process was void and invalid.

43. On June 15, 2019, Doo Ko sent Request for Admissions to Attorney for U.S. Bank Trust (by Priorty Mail) Attorney for U.S. Bank Trust did not respond Doo Ko's Request for Admissions. Request for Admissions are deemed admitted.

44. On October 1, 2019, Plaintiff sent Request for Admissions (set two) & Form Interrogatories (set one) to Attorney for U.S. Trust Bank.( By Priorty Mail) Attorney for U.S. Bank Trust did not respond Doo Ko's Request for Admissions. Request for Admissions are deemed admitted.

## HISTORY OF THE MORTGAGE LOAN AND PROPERTY OWNERSHIP

45. On May 22, 2014, Indecomm Global Services on behalf of the original lender Bank of America, N.A., executed an Assignment of DOT, assigning it to Christiana Trust, a division of Wilmington Saving Fund Society, FSB, not in its individual capacity but as Trustee of ARLP 3 ("Christina Trust"). This Assignment of Deed of Trust was recorded on May 27, 2014. On July 8, 2014, Indecomm Global Services on behalf of the original lender Bank of

America, N.A., executed an Assignment of DOT, assigning it to Christiana Trust, a division of Wilmington Saving Fund Society, FSB, not in its individual capacity but as Trustee of ARLP 4 ("Christina Trust"). This Corrective Assignment of Deed of Trust were recorded on July 10, 2014.

46. On March 19, 2015 Ocwen Loan Servicing on behalf of Christiana Trust, a division of Wilmington Saving Fund Society, FSB, not in its individual capacity but as Trustee of ARLP 4, executed an Assignment of the DOT, assigning it to Wilmington Trust, National Association, not in its individual Capacity But as Trustee of ARLP Securitization Trust, Series 2014-2("Wilmington Trust"). This purported assignment was invalid and void because the Note and DOT had been previously assigned to Christina Trust on July 10, 2014. A copy of this March 19, 2015 assignment is attached hereto as Exhibit. On Plaintiff's information and belief, notice of this purported transfer of ownership was never provided by Wilmington Trust or lender.

47. Doo Ko did not receive any letter from Ocwen, the new servicer of the mortgage loan, advising that new owner of the loan. On Plaintiff's information and belief, Plaintiff received no written notice of the transfer of servicing on the loan to Ocwen as required by the law. Additionally, on Plaintiffs' further information and belief, Wilmington Trust did not provide any notice of change of ownership of their loan to Plaintiffs as required by law.

48. On Plaintiff's information and belief, he was not provided with notice of this transfer of ownership by U.S. Bank Trust in violation of law.

49. On or about May 2015, Plaintiff sent Ocwen a Qualified Written Request (QWR). Ocwen was required to acknowledge receipt of Plaintiffs' QWR within five (5) days, to provide the identity and contact details of the new owner within ten (10) business days, and to act with

respect to Plaintiff's inquiry within thirty (30) days , Ocwen did none of these. When Ocwen

failed to either acknowledge receipt of Plaintiff's QWR, provide the identity of the new owner

of the loan, or timely respond to the questions in the QWR, Ocwen also did not provide any

acknowledgement of receipt to Plaintiff's QWR as required by law.

50. Ocwen had recognized that there were gaps in the chain of title of the loan and was attempting

to address this by creating a new document to fill in the gaps one year after the fact. This

April 16, 2015 assignment was invalid because Wilmington Trust had no authority to make

this assignment, first because Wilmington Trust had already assigned the loan one year earlier.

51. On Plaintiff's information and belief, based on servicing industry standards, at the time that

Caliber took over the servicing of the loan, Caliber was provided by Ocwen with its entire

loan file which should have included, but would not be limited to, the original Note (with a

full set of endorsements to the current purported investor), the Deed of Trust (along with all

assignments from the date of loan origination to the current time), a full and complete

payment history on the loan from its inception, copies of monthly remittance reports from

Ocwen to the purported owner of the loan reflecting all servicer advances made by Ocwen to

said purported owner while Ocwen was servicing the loan, and full correspondence files

between the Plaintiff and Ocwen regarding the loan (including Plaintiff's challenges to the

completeness and accuracy of the chain of title, as well as to who was, in fact, the legal owner

of the loan, as well as copies of all the QWR's sent to Ocwen and Ocwen's responses thereto

in regards to the loan).

52. On October 7, 2016 Wilmington Trust recorded an assignment of the DOT to U.S. Bank Trust,

N.A. ("U.S. Bank Trust"). However, Wilmington Trust lacked the legal authority to do so

based on the previous assignment to Christina Trust in July 2014. Further, this assignment

impermissibly bifurcated the Note and DOT, only purporting to assign the latter. A copy of this assignment is attached hereto as Exhibit. On Plaintiff's information and belief, notice of this purported transfer of ownership was never provided to them by U.S. Bank Trust, in violation of law.

53. All Defendants failed to disclose the mandatory duties to disclose the Assignment of DOT to Plaintiff within 30 days.

54. Doo Ko did not receive any letter from Caliber, the new servicer of the mortgage loan, advising that new owner of the loan. On Plaintiff's information and belief, Plaintiff received no written notice of the transfer of servicing on the loan to Caliber as required by the provisions of the law. Additionally, on Plaintiffs' further information and belief, U.S. Bank Trust did not provide any notice of change of ownership of their loan to Plaintiffs as required by law.

55. In Substitution of Trustee(11/1/2016), the signer did not provide the required information to sign a document in signature block such as name of the person signing the document and the capacity in which the person is signing in signature block and the date on which the document was signed. The date on which the contract should be included to show the contract's effective date. The signature was not dated in signature block. The proper signature should include name, title and the name of the organization. Since companies cannot sign for themselves, this signature identifies the person signing, the title and authority of the person, and the name of the contracting party. If signing on behalf of a business, they must provide title. But U.S. Bank Trust and/or Caliber did not indicate signer's name & the signer's title underneath signature. U.S. Bank Trust and/or Caliber did not record the Power of Attorney or agency agreement the notice(Substitution of Trustee) as required under California Law. Thus

Quality executed and recorded 2017 NOD before it had the legal authority to do so. Accordingly 2017 NOD and all subsequent documents(2017 NTS & 2017 TDUS) are void and of no legal effect.

56. Moreover, based upon information and belief, Arturo Zarazua did not have the legal authority to sign on behalf of Defendants as he did not enter into a power of attorney agreement. Lastly, 2016 Substitution is void because the Power of Attorney allegedly giving Arturo Zarazua to execute and record the Substitution was not recorded concurrently with the Substitution in violation of California law, including, but not limited to, California Civil Code Section 2933.

57. Additionally, 2016 Substitution is void because it did not disclose Artuto Zarazua's principal and did not subscribe BOA's name to it in violation of California Civil Code Section 1095. As there was not an assignment of DOT from BOA to U.S. Bank Trust, the failure to subscribe BOA to the Substitution rendered it invalid and void.

58. Nevertheless, Quality thereafter recored a Notice of Trustee's Sale in 2017. A true and correct copy of the notice is attached hereto as Exhibit. As duly recorded and legally valid NOD and Substitution of Trustee is required before Quality could serve an record a Notice of Trustee's Sale, and the former never happened, the Notice of Trustee's Sale was also void and of no legal effect.

59. A supporting Declaration of Compliance was recorded by Caliber Home Loans or Trustee. A review of the Declaration of Compliance reveals however that it was not executed by Caliber, the present loan servicer, on behalf of the present purported owner of the loan, U.S. Bank Trust. Rather, the Declaration was executed back in 2014 by Ocwen Loan Servicing LLC, a predecessor servicer, on behalf of Christina Trust. Further, this Declaration of Compliance was regarding a former NOD recorded by Ocwen. As such Declaration of Compliance

attached to the 2017 NOD were void and invalid, as Defendant Caliber failed to comply with

the provisions of California Civil Code § 2923.55, and California Civil Code § 2924.17(a),

rendering the NOD void. The Notice of Default was not mailed until May 17, 2017.

60. On or about August 15, 2017, Plaintiff sent Caliber letter disputing that the U.S. Bank Trust

was the true legal owner of the loan, and asserting that it could not establish that it was legally

entitled to either collect on the debt or to seek to foreclose on the property. This was based on

the recorded assignment chain which indicated that there were significant gaps in the chain of

title.

61. However, Caliber did not respond within 30 days to Plaintiffs' letter/notice or provide the

documents requested, as required by law.

62. On May 17, 2017, a Notice of Default and Election to Sell Under Deed of Trust, with a

supporting Declaration of Compliance was recorded by Caliber. A copy of this NOD is

attached hereto as Exhibit. Included in the NOD was a statement by the Trustee's

representative attesting that the loan servicer of Plaintiffs loan, Caliber, had fulfilled its

obligations under California Civil Code § 2923.55, (the fulfillment of which is a necessary

predicate to being able to legally record a NOD in California) by executing a Declaration of

Compliance to the Notice of Default, which Declaration was attached and recorded. A review

of the Declaration of Compliance reveals however that it was not executed by Caliber, the

present loan servicer, on behalf of the present purported owner of the loan, U.S. Bank Trust.

Rather, the Declaration was executed back in 2014 by Ocwen, a predecessor servicer, on

behalf of the Christina Trust. Further, this Declaration of Compliance was regarding a former

NOD recorded by Ocwen . As such both the Trustees attestation as well as the Declaration of

Compliance attached to the NOD were invalid, as they failed to comply with the provisions of

California Civil Code § 2923.55, and California Civil Code § 2924.17(a), rendering the NOD void. The May 2017 Notice of Default was not mailed. On Plaintiff's information and belief the loan was not in default at this time because Ocwen, and then Caliber, in the form of required servicer advances, had been paying to the purported owner of the loan all monthly payments of principal and interest supposedly due under the terms of the Promissory Note and Deed of Trust.

63. As of the date of the filing of Complaint, Caliber had still not provided Plaintiff with copies of all assignments representing a full assignment chain, the results of Caliber's complete title examination; and a full and complete copy of the payment history of the loan and a detailed breakdown of the amounts claimed to be due under the loan, all as required under law. Nor have they responded to Plaintiff's questions on the loan, explained or corrected financial discrepancies in its billing or statements and accounting, or provided Plaintiffs with copies of the Transfer of Ownership Notices required under law.

64. Defendants, prior to taking the foreclosure related actions herein alleged, did not ensure, as required by statute, that they had reviewed competent and reliable evidence substantiating their legal authority to record, either themselves or as the beneficiary's agent, the Notice of Default. Indeed, at the time the NOD was recorded, in addition to the foregoing failures, Defendants also knew or from a review of competent and reliable evidence should have known, that the NOD was recorded despite the failure to first provide Plaintiff with the required Notice of Default and Intent to Accelerate and the requisite time to cure the alleged default as required by the applicable DOTs.

65. In addition, a review of the Declaration of Compliance attached to Plaintiffs' NOD reveals that it was neither accurate nor complete. First, it was not executed by Caliber, the then loan

servicer, on behalf of the then purported owner of the loan, U.S. Bank Trust. Instead, the declaration was executed back in 2014 by Ocwen, the predecessor servicer to Caliber, and was executed not on behalf of U.S. Bank Trust, but on behalf of another entity altogether, the Christiana Trust. Second, this declaration was executed in connection with and as support for a wholly separate and prior NOD that was recorded by and subsequently rescinded by Ocwen. The recording of the present NOD by Caliber was required to be accurate and complete, and supported by competent and reliable evidence. Caliber also had to comply with the provisions contained within Civil Code section 2923.55. They did neither. On information and belief, the Declarations of Compliance attached to the NOD is likewise inaccurate and/or incomplete.

66. Caliber and U.S. Bank Trust cannot support the May 2017 NOD with an almost three (3) year old declaration executed by a different servicing entity on behalf of a different purported owner. Nor can Caliber and U.S. Bank Trust support the current NOD with an almost three (3) year old declaration. There is no basis for the Trustee's attestation or any possible way that the loan servicer, Caliber, fulfilled its obligations under Civil Code § 2923.55, and Civil Code Section 2924.17. For these reasons, the recording of the May 2017 NOD by Caliber on behalf of U.S. Bank Trust was on its face void and invalid. Despite these serial and material HBOR violations, and despite the lack of competent and reliable evidence, Defendants nevertheless proceeded to record the NOD. Although required to do so prior to recording a notice of default, Caliber failed to provide Plaintiff with notice of their right to request a copy of the promissory note, the deed of trust, all assignments of the deed of trust and a copy of the payment history on the loan. Nor did Caliber attempt to contact the Plaintiffs or other Class members to assess their financial condition as required to be attested to in the Declarations in support of the NODs.

67. On November 21, 2014, a Second Notice of Default("NOD") was recorded against the property. In California, a Notice of Default does not expire. The Notice of Default would be active until a Notice of Rescission or a Reconveyance is recorded. Notice of Rescission of Second NOD was not recorded against the property until Trustee's Sale. Therefore foreclosure action (2014 NOD) was pending against Doo Ko in 2017. 2017 NOD & 2017 NOT is void because 2014 NOD was pending in 2017. Western Progressive LLC was trustee in Second NOD(2014). Caliber and U.S. Bank Trust knew Quality was not valid trustee for foreclosure action in 2017.

68. Attached hereto as all Exhibit is a true and correct copy of Notice of Default ("NOD") dated 11/21/2014 (Orange County Recorder #2014000502000) This 2014 NOD recorded by Western Progress, LLC(Trustee), Loan Servicer Ocwen Loan Servicing, LLC(Loan Servicer) and Beneficiary Christina Trust (Beneficiary) in this matter which is still valid. Notice of Rescission of 2014 NOD was not recorded against the property until Trustee's Sale.

69. Thus, any and all subsequent Assignment of Deed of Trust were recorded by lender or trustee, it must be voided, Once original NOD was recorded in 2014, 2014 NOD is still valid. In California, a Notice of Default does not expire. The Notice of Default would be active until a Notice of Rescission or a Reconveyance is recorded. Notice of Rescission of 2014 NOD was not recorded against the property until Trustee's Sale. Since 2014 NOD is still valid, Trustee's Sale in 2017 was Void. Therefore Trustee's Deed Upon Sale (TDUS) is void.

70. As such, Plaintiff alleges there's no question that Christina Trust was beneficiary when 2014 NOD was recorded by Western Progressive, LLC(Trustee) 2014 NOD is still valid because California Civil Code section 2924(a)(6) specially authorizes "the holder of beneficial interest under the mortgage or deed of trust... or the designated agent of holder of the beneficial

interst," to "record or cause a notice of default to be recorded or otherwise initiate the foreclosure process." Cal.Civ.Code section 2924(a)(6)

71. On 4/16/15, A Void Assignment of DOT was recorded. The Assignment was void because (1) it reflected Ocwen was Christina Trust's Attorney in fact when no power of attorney was recorded in orange county appointing Ocwen as Christina Trust's attorney in fact. (2) Vicki Pospisil, a known robo-signer, signed the document for Ocwen. Vicki Pospisil is also known robo-notary.

72. Since April 2015 Assignment of DOT was void. Assignment of DOT to U.S. Bank Trust is void because of broken chain of title. Then November 2016 Substitution of Trustee was also void because U.S. Bank Trust did not have a beneficial interest in the deed of trust, substituted Quality as trustee. U.S. Bank Trust did not purchase the deed of trust. Even if U.S. Bank Trust purchased the Deed of Trust, Substitution of Trustee still void because (1) it reflected Caliber was U.S. Bank Trust's Attorney in fact when no power of attorney was recorded in orange county appointing Caliber as U.S. Bank Trust's attorney in fact. (2) Arturo Zarazua, a possible robo-signer, signed the Substitution of Trustee for U.S. Bank Trust or Caliber.

73. Further, based upon information and belief loan servicers, such as Caliber and/or Ocwen, of residential mortgages that are collateral for residential mortgage backed securitized trusts (RMBS) such as Plaintiff herein, as well as in some cases for loans that are held for whole loan investors, are required under the terms of the related servicing agreements to make servicer advances. These servicer advances provide continuity of payment to the investors and preserve the related collateral. Servicer advances typically cover, with respect to each mortgage, principal and interest payments on the underlying mortgages, property taxes and

assessments and property insurance premiums. As a result of these servicer advances by

parties unrelated to the underlying loan agreement, Plaintiff's obligations under the

Promissory Note and the Deed of Trust have been met to the securitized trusts purportedly

owning the loans and as such they are not and were not in default of the loan obligations.

Accordingly, the filing of Notices of Default and the initiation of foreclosure proceedings on

Plaintiff's subject to such servicer advances are invalid.

74. Defendants' actions as alleged herein constitute material violations of the HBOR and were

carried out by Defendants intentionally, recklessly or were the result of willful misconduct by

Defendants. Defendants admitted that there were gaps in the chain of title and were aware that

there was a myriad of other problems, which made were at odds with the requirement that

they have competent and reliable evidence. Additionally, had Defendants reviewed competent

and reliable evidence before recording the 2017 NOD, they would have seen the errors and

irregularities in the documents and ownership and would have recognized they did not have

the legal right or standing to take the actions they took. They would have also realized that

they had not complied with the provisions of Civil Code section 2923.55 and accordingly

lacked the ability to record the 2017 NOD, or issue the Notice of Trustee's Sale with respect

to the Property. On information and belief, these actions were conducted on Plaintiff.

75. Plaintiff suffered actual economic damages as a direct and proximate result of Defendants'

misconduct. Accordingly, Plaintiff is entitled to all relief provided by the HBOR, including

legal fees. In addition, Plaintiffs are entitled to injunctive relief pursuant to Section

2924.12(a)(2), with said injunction remaining in place until such time as the Defendants have

corrected and remedied the various violations of the HBOR as set forth herein.

76. Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

77. Plaintiffs bring this claim individually pursuant to the California Homeowner Bill of Rights, California Civil Code Section 2920.5 et seq. (the "HBOR").

78. Plaintiff is "borrower" as that term is defined by the HBOR. Section 2924.17(a) of the California Civil Code mandates "A declaration recorded pursuant to Section 2923.5 or, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence."

79. Section 2924.17(b) of the California Civil Code provides that "Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information."

80. Section 2923.55 of the California Civil Code provides in pertinent part that a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until thirty (30) days after contact is made with the borrower to assess the borrower's financial condition and explore options for the borrower to avoid foreclosure or thirty (30) days after satisfying the due diligence requirement with regard to contacting or attempting to contact the borrower. In addition, before recording a notice of default, the mortgage servicer must also notify the borrower that they may request a copy of

the promissory note, the deed of trust, all assignments of the deed of trust and a copy of the payment history on the loan.

81. Further, a notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to Section 2920.5(c).

82. As alleged in detail above, Defendants' actions are contrary to the provisions and requirements of the HBOR. In addition to their own admissions regarding the absence of competent and reliable evidence, a simple review of the payment histories and the loan files received from the predecessor servicer (Ocwen) would have revealed that Defendants lacked competent and reliable evidence demonstrating that they had the right, power or authority to record notices of default or otherwise commence foreclosure proceedings on Plaintiff's property.

83. The assignment was a nullity and so U.S. BANK TRUST, N.A. LSF9 MASTER PARTICIPATION TRUST ("U.S. Bank Trust ") was not the true owner or holder of Doo Ko's note and trust deed, was not owed any money under Doo Ko's loan documents, and thus had no power to authorize initiation of the foreclosure sale and eviction.

84. Caliber and U.S. Bank Trust knew there was a "broken chain of assignments of DOT" and Plaintiff was not the "Holder in due Course" of the note and was not properly assigned the debt. U.S. Bank Trust is not Lender.

85. 2016 Substitution of Trustee was void or invalid for three reasons: (1) Assignments of Deed of Trust(DOT) being void, U.S. BANK TRUST, N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, lacked the power to execute the substitution; (2) the signature on

the substitution was forged or was made by an individual who did not have authority to act on behalf of Plaintiff; There's break of chain of title. It is also very important to note that the Trust Agreement revealed here also acknowledges that it includes/involves "LSF9 Mortgage Holdings, LLC." as the "Depositor." This entity is almost universally missing in chain of title. "LSF9 Mortgage Holdings, LLC." must appear before Defendants assign to U.S. BANK TRUST, N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST.

86. Notice of Default(11/21/2014) is filed by "CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 4" would be active until a Notice of Rescission or a Reconveyance is recorded. Defendants and DOES Defendants did not file Notice of Rescission of 2014 NOD. So 2014 NOD foreclosure actions was pending in 2017. Therefore NOD(May 2017) by Caliber was void.

87.     On or about 10/07/2016, Wilmington Trust, National Association, Not In Its Individual Capacity But As Trustee of ARLP Securitization Trust, Series 2014-2 Filed Assignment of Deed of Trust to U.S. Bank Trust. "Wilmington Trust, National Association, Not In Its Individual Capacity But As Trustee of ARLP Securitization Trust, Series 2014-2 (Address: 1110 Strand Street Suite 2A, Christiansted, VI 00820)" does not now and never has existed at that address, that it has no personnel, nor desk, no chair, nor telephone, nor assigned parking space, nor filing cabinet, nor any other indicium of possessory control, over the address recited, and the address as proffered is a charade and an obfuscation, intended to mislead the Court, and constitutes a fraud on court.

88. There is No valid Disclosure of Assignment of Deed of Trust to Defendant Doo Ko within 30 days of transaction by Assignees. And furthermore, there's No valid Disclosure of Change of Loan Servicers as such Caliber, Ocwen, nor BOA herein within 15 days to Borrower Doo Ko.

89. Plaintiff alleges on information and belief that none of these alleged beneficiaries or representatives of the Beneficiary have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

90. Plaintiff further alleges that the foreclosure sale of the Subject Property was not executed in accordance with the requirements of California Civil Code Sections 1624, 2924 et seq.

91. That the Trustee who was acting as the agent of the principal failed to have written authorization to act for the principal and under Cal. Civ. Code Sec 1624 the agency relationship must also be in written form.

92. That the notices and foreclosure failed to conform with the provisions of California Civil Code Sections 1624, 2932.5 et seq., and Commercial Code section 3302 et seq

93. Plaintiff further alleges that Cal. Civ. Code section 2924 and its subparts are being applied to Plaintiffs in a manner that is unlawful, because at least in part the party acting as the Trustee proceeding with the foreclosure of Plaintiff's Subject Property notwithstanding the following facts and circumstances. Plaintiff is informed and believe that the Trustee was not in possession of the original Note, that the Note when it was assigned to the current beneficiary did not covey the power of sale because it violated the terms of California Civil Code section 2932.5, and as such the foreclosure of Plaintiff's subject property did not conform with the strict mandates of Civil Code section 2924.

94. Plaintiff alleges that Defendants unlawfully, and with full knowledge and intent, intentionally interfered with the subject contract promissory note and deed of trust for their own gain and at

the expense and detriment of Plaintiff. Plaintiff denies and refutes that Defendants are a valid

beneficiary or agent for beneficiary, a lawful assignee or entitled in any way under the

contract deed of trust and further alleges that both Defendants claim to be entitled in some

way under the contract without lawful or contractual authority.

95. Plaintiff alleges that all Defendants worked together in a scheme to convert a personal

Instrument (Promissory Note) and subsequently real property to their own possession without

lawful Authority.

96. Plaintiff alleges that any and all recorded instruments, including 2017 NOD and 2017 NTS

are void because their purported authority flows from the void assignment instruments as

fully examined and alleged above.

97. Plaintiff alleges that a controversy exists as to whether or not all Defendants acquired any

rights to the loan contract. Defendants claim a beneficial or purchase interest in the contract

and real property at this time.

98. Plaintiff alleges Defendant Caliber is instructing Quality to foreclose and sell Plaintiffs home

without valid authority and is not the beneficiary.

99. Plaintiff alleges that Defendants' trustee is willfully, negligently, and with malice

aforethought proceeding with foreclosure sales without information from the beneficiary.

Plaintiff alleges that all Defendants willfully, negligently and with malice aforethought, filed,

negligently relied upon or caused to be filed, a series of public documents known by both

Defendants to be false at the time of the execution and filing of the instruments in the public

record against public policy and against Plaintiffs' contract and property interests.

100.     Defendants claim an interest that is adverse to Plaintiff's by intentionally interfering

with a contract without such authority, and by failing to evidence, after notice by Plaintiff and

1    request for such evidence, any document executed by the true beneficiary of the debt

2    obligation, which authenticates Defendant's assertions that they are acting as bona fide agents

3    and/or assignees for an authenticated beneficiary to Plaintiff's debt obligation.

4    101.    Plaintiff alleges that he has rights to disclosures under Cal. Civ. Code §§ 2924.17(a),

5    2924.17(b). Plaintiff alleges that Defendants, as purported agent for the beneficiary and loan

6    servicer, had a duty to provide Plaintiff: "… the mortgage servicer will ensure that the

7    document is accurate and complete and supported by competent and reliable evidence."

8    Section 2924.17(a) states, "the mortgage    servicer shall ensure that it has reviewed

9    competent and reliable evidence to substantiate the borrowers default and the right to

10   foreclose." Furthermore, 2924.17(b) states, "A beneficiary, or his or her authorized agent,

11   shall, within 21 days of the receipt of a written demand by an entitled person or his or her

12   authorized agent, prepare and deliver to the person demanding it a true, correct, and complete

13   copy of the note or other evidence of indebtedness with any modification thereto, and a

14   beneficiary statement." Civil Code § 2943(b)(1).

15   102.    Plaintiff alleges that Defendants did not perform any of the above described duties.

16   103.    Plaintiff alleges that because of Defendants' acts and omissions, Plaintiff has been

17   harmed and prejudiced.

18   104.    As a direct and proximate result of Defendants acts and omissions, Plaintiff's loan

19   obligation has been accelerated by an unlawful means, forcing him to pay the entirety of his

20   debt at one time. His credit has been damaged along with his ability to seek alternative

21   financing. His loan obligation has not been verified as to whom the payments are actually due

22   and what exact amounts are due, thus exposing her to duplicative payments. He is at

23   immediate risk of losing possession to Defendants due to an illegal and oppressive sale by_

Defendant's acts and omissions; the property is encumbered by who have no lawful interest in the loan contract or real property. He has suffered emotional damages due to constant worry about whether or not the wrong party is going to dispossess his of his home. He cannot negotiate the contract with a party that has been authenticated as the lawful beneficiary to the debt obligation; he has been subjected to a wrongful foreclosure sale at the direction and execution of all Defendants named herein.

105.     Plaintiff further alleges that defendants misrepresented about foreclosure sale. . Plaintiff alleges Caliber told Plaintiff's Property "No Trustee's Sale will take place in September 2017. Plaintiff also alleges Caliber and U.S. Bank Stated Plaintiff's Property "No Trustee's Sale has been taken place" in October 30, 2017. Plaintiff alleges that Defendants, and each of them, knew at the time they made these representations to Plaintiff that they were untrue, and defendants know at the time that they were attempting to foreclose on Plaintiffs' Trust Deeds and notes that they had no right to do so.

## FIRST CAUSE OF ACTION

## WRONGFUL FORECLOSURE

### (Against U.S. Bank Trust; Caliber and DOES 1 through 10)

106.     Plaintiff re-alleges and incorporates by this reference all of the allegations of the proceeding paragraphs as though fully set forth herein, in this cause of action.

107.     Plaintiff is informed and believes and thereon alleges that after the origination and funding of his loan, it was sold or transferred to investors or other entities and that U.S. Bank Trust did not own the loans or the corresponding notes at the time of the foreclosure sale and/or BOA did not own the loans or corresponding notes at the time Chase allegedly

acquired BOA's assets. Moreover, Quality was not lawful appointed as trustee by U.S. Bank Trust and/or DOES 1 through 10. Accordingly, none of Defendants in this action had the right to declare default, cause notices of default to be issued or recorded, or foreclose on Plaintiff's interest in the Subject Property. None of the Defendants in this action was the note holder or a beneficiary at any time with regard to Plaintiff's loan.

108.    Thus, it is with great suspicion that any foreclosure initiated or involving Defendants are highly suspect, given Defendant's propensity for forging documents..

109.    Defendants' claim to ownership of the subject property is void and defective. Defendant(s) has no verifiable proof that it is the owner of the subject proper

110.    The elements of a tort cause of action for wrongful foreclosure track the elements of an equitable cause of action to set aside a foreclosure sale: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust;  (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed;  and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.; and (4) no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale."

111.    Plaintiff alleges that Defendants and their agent/or representatives caused illegal, fraudulent or willfully oppressive sale of the Subject Property. Defendants breached their obligation to Plaintiff to notify him of any foreclosure alternatives he may have been eligible for. Defendants failed to comply with 2923.5(a) 2923.5(b). Therefore 2017 NOD taken thereafter are invalid and void.

112.     U.S. Bank Trust wrongfully purchased at auction on September 25, 2017 without a certificate of purchase; TDUS is recorded in Official records on 10/04/2017. Trustee's Deed Upon Sale("TDUS") is void and does not meet statutory compliance Defendants did not meet statutory requirements; therefore the TDUS is void, not voidable. Trustee's Deed Upon Sale ("TDUS") is void because "This instrument is recorded at the request of Servicelink as an Accommodation only…" in first page of TDUS. Trustee's Deed with "ACCOMMODATION ONLY" stamp is not valid deed. TDUS was filed as an ACCOMMODATION ONLY with no insurance of truth or affect on title. Plaintiff has no standing to begin eviction. This instrument is being recorded as an accommodation only, with no representation as to its effect upon title. The document refers to is the Trustee's Deed Upon Sale. The quoted "warning" is a disclaimer that the recorder stamped upon the face of the instrument. Defendant's argument that "absence of showing of a better title or right, the bare prior possession of property is sufficient to indicate ownership and warrant a recovery by the occupant." Validity of the apparent rightful holder based on the recorded TDUS failed. TDUS would be defective and could not support U.S. Bank Trust's Possession.

113.     U.S. BANK TRUST did not acquire title to the subject property in any capacity, trustee or otherwise. The Trustee's Deed Upon Sale indicates that the property was "sold" to U.S. BANK TRUST on 09/25/2017 for the amount of $1,425,631.44. This is impossibility as no funds have ever been tendered pursuant to this transaction. Since the grantee acquired the property for no value as described in A.R.S. § 33-404(F) it does not enjoy an exemption from disclosing the beneficiary as required by A.R.S. § 33-404(B). A.R.S. § 33-404(B) states, "… a grantor who holds title to the property as a trustee, whether or not such capacity is identified on the document through which title was acquired, shall also disclose the names and addresses

of the beneficiaries for whom the grantor held title to the property AND…" Additionally,

Quality Loan Service Corporation was never appointed as a trustee by an authentic and

authorized party, it has neither capacity to effectuate said transaction nor any protections

under Title 33, Chapter 6.1 for its egregious actions. As the beneficiary was not disclosed on

the Trustee's Deed Upon Sale and the alleged trustee operated without authority, the

instrument is void and of no force and effect.

114.    Plaintiff alleges that Trustee's Sale was void because U.S. Bank Trust did not pay

$1,425,631.44 cash consideration at the Trustee's sale on 9/25/2017 and do not have

certificate of purchase or proof of payment for $1,425,631.44. Plaintiff alleges Credit Bid in

Trustee's Sale was not acceptable from U.S. Bank Trust who is not a beneficiary under a deed

of trust as defined by state statute.


A process is merely a methodology and a database is a compilation of information and it
cannot be a "Beneficiary" as it cannot receive payments nor can it ever hold title to an
instrument pertaining to real property or the real property itself. The process elaborating how
"mortgage ownership and servicing rights are originated, sold and tracked" does not create
statutory status as a Beneficiary. The Beneficiary cited in the Notice of Trustee's Sale never
received an authorization from an original Beneficiary as there never was a statutorily
compliant Beneficiary in the Deed of Trust. Since there was never a Beneficiary established in
the Deed of Trust, the Deed of Trust is void and of no force and effect. The indicated
Beneficiary has no authorization to initiate a "power of sale" against the property. It is
possible that a mortgage could be construed to exist, but that would require judicial
foreclosure instead of non-judicial private sale


115.    The SUBSTITUTION OF TRUSTEE, which was recorded in the County of Orange

Record's Office on November 1, 2016 for the property located at 2244 Shapiro St., Fullerton,

CA 92833. This is VOID SUBSTITUTION OF TRUSTEE. No signature by Entity(U.S. Bank

Trust, N.A. as Trustee for LSF9 Master Participation). Substitution of Trustee is in fact not a

Substitution of Trustee as there is no signature by U.S. Bank Trust. Person who appeared and signed in front of Notary Public is different Entity and Signature is not dated. False signatures are considered a type of forgery which is an extensive category of crimes that involves falsification of information on a document. Forgery is the faking of a signature without permission, making a false document or changing an existing document without authorization. Therefore, Substitution of Trustee to Quality Loan Service Corporation is void.(See Void Substitution of Trustee) Again, In substitution of trustee on 11/1/2016, there's No Signer's Name & No title of company information under signature line. U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust don't have signer's name and title of a human being that is signing on behalf of party in signature block. Therefore U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust's Substitution of Trustee is VOID. If 2016 Substitution of Trustee is VOID, 2017 NOD, 2017 NOTS & 2017 TDUS is VOID. In 2017, a NOD was recorded by Defendant Quality Loan Service Corporation("Quality"). Again, Quality was not the successor Trustee.

116.     In Substitution of Trustee(11/1/2016), the signer did not provide the required information to sign a document in signature block such as name of the person signing the document and the capacity in which the person is signing in signature block and the date on which the document was signed. The date on which the contract should be included to show the contract's effective date. The signature was not dated in signature block. The proper signature should include name, title and the name of the organization. Since companies cannot sign for themselves, this signature identifies the person signing, the title and authority of the person, and the name of the contracting party. If signing on behalf of a business, they must

provide title. But U.S. Bank Trust did not indicate signer's name & the signer's title underneath signature.

117.      Foreclosure Trustee must have authority to conduct sale. If Substitution of Trustee occurred as the result of the intervention of a party who was not a beneficiary, then no substitution occurred. Thus no right of possession arises. Plaintiff alleges Quality Loan Service Corporation was not valid trustee. Plaintiff further alleges on information and belief that none of the Defendants in this action were beneficiaries or representatives of the beneficiary. That is, none of them were assigned the promissory notes and deeds of trust executed by Plaintiff. Also, U.S. Bank Trust and/or Caliber failed to record the limited Power of Attorney concurrently with the substitution of Trustee (2016) as required under California law. Moreover, Arturo Zarazua did not have the authority to substitute the trustee under DOT and, even if he did, Quality acted unlawfully before it was allegedly substituted trustee.

118.      A valid Substitution of Trustee has never been made by a beneficiary with authority to appoint a successor trustee pursuant to A.R.S. § 33-804 (B) which states, "The beneficiary may at any time remove a trustee for any reason or cause and appoint a successor trustee, and such appointment shall constitute a substitution of trustee." The recorded Substitution of Trustee fails to meet the requirements of A.R.S. § 33-804 (D) in that no document has ever been acknowledged that substitutes or appoints a trustee by an authorized Beneficiary or its agent. A.R.S. § 33-420 (C), states, "A document purporting to create an interest in, or a lien or encumbrance against, real property not authorized by statute, judgment or other specific legal authority is presumed to be groundless and invalid." A valid Substitution of Trustee to Quality Loan Service Corporation has never been made in accord with any contractual

provision, California statute or court action. Therefore, the Notice of Trustee's Sale is void as the cited Trustee has never been authorized to exercise a "power of sale" against the property.

119.     More specifically, U.S. BANK TRUST had constructive notice of the defects alleged by Defendants because the chain of title of the Property in the Official Records in the office of the Recorder of Orange County, California Further, U.S. BANK TRUST, N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST cannot be said to qualify as a bona fide purchaser without notice since Caliber Home Loans, Inc. serves as a Servicer of U.S. BANK TRUST, N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST.

120.     Failure to Comply with CCC § 2934. Caliber or Trust attempted to file several improper Assignments of Deed of Trust. But All improper Assignments of Deed of Trust lack Notices. Therefore Assignments of Deed of Trust are void. Any assignment of a mortgage and any assignment of the beneficial interest under a deed of trust may be recorded, and from the time the same is filed for record operates as Constructive Notice of the contends thereof to all person. See Civil Code section 2934 Assignments of Deed of Trust's Notice is required. See Civil Code section 2934. Also an attempted second assignment of a loan by a lender who has already assigned the loan away is void. If the transfer is void, that would mean that the trust do not own the mortgages; and therefore lacks standing to foreclose and also lacks standing to evict. Plaintiff alleges that there was an attempted second assignment of the loan on April 16, 2015. Exhibit 7 Plaintiff alleges this second assignment is void. On March 19, 2015 Ocwen Loan Servicing on behalf of Christiana Trust, a division of Wilmington Saving Fund Society, FSB, not in its individual capacity but as Trustee of ARLP 4, executed an Assignment of the DOT, assigning it to Wilmington Trust, National Association, not in its individual Capacity But as Trustee of ARLP Securitization Trust, Series 2014-2("Wilmington Trust") and

recorded on April 16, 2015.. This purported assignment was invalid and void because the Note and DOT had been previously assigned to Christina Trust on July 10, 2014.

121. Based upon the foregoing, U.S. BANK TRUST, has No standing to bring this foreclosure action such as NOD and file UD Complaint against Doo Ko. Bank Trust has no legal right to attempt to claim ownership of the subject Note and Mortgage, or any right as servicer, and is without any legal basis to attempt to foreclose the subject mortgage or to collect on the mortgage note because U.S. BANK TRUST did not receive Note from original Deed of Trust on or about 7/2/2007 as instrument number 2007000427193(See TDUS second Page & Deed of Trust) Deed of Trust is Null Void (chain of title is broken), the Note was endorsed in blank. (See Deed of Trust)

122. U.S. Bank Trust fails to meet standards of duly perfected title requirements pursuant to Cal. Civ. Code §§ 2924, 2924 (h), 2924 (c), 2925 and 2953. Emphasis added; See, Bus. Oversight Desist and Refrain Order, Registry of Action, Request to Take Judicial Notice, Exhibit No. 1, tab 1. Furthermore, other Imperfections discovered within Plaintiffs Trustees Deed Upon Sale is objected to, for nothing more than "hear say".

123. Doo Ko's Deed of Trust(Copy of pages 1 and 2 of the Deed of Trust) reflects that the Lender is Bank of America, N.A.("BOA") and the Trustee is PRLAP, Inc. there is no evidence that BOA has assigned the Note or Deed of Trust to U.S. Bank Trust.

124. As to the second element, Plaintiff alleges that Plaintiff was harmed by, the loss of the home, the money and time spent on the pursuit of the loan modification alternative instead of another alternative such as short sale, deed in lieu of foreclosure, or other option and now further damage to Plaintiff's credit reports.

125.     On information and belief, Defendants knew a) that there were discrepancies between

the amounts stated as due in their debt validation letters and the monthly mortgage statements

sent to Borrower; b) they lacked a full and complete payment history of the loans they took

over from Ocwen, as well as from other servicers, that they were seeking to collect upon from

the Borrower; and c) that as a result of servicer advances the alleged debts as well as

purported default of the loans of borrower could not be validated or substantiated .

Consequently, Caliber knew that it clearly lacked the ability to accurately know and thus

validate the nature and true amount of the alleged debt owed by borrower.

126.     Defendants, prior to taking the foreclosure related actions herein alleged, did not

ensure, as required by statute, that they had reviewed competent and reliable evidence

substantiating their legal authority to record, either themselves or as the beneficiary's agent,

the Notice of Default. Indeed, at the time the 2017 NOD was recorded, in addition to the

foregoing failures, Defendants also knew or from a review of competent and reliable evidence

should have known, that the 2017 NOD was recorded despite the failure to first provide

Plaintiff with the required Notice of Default and Intent to Accelerate and the requisite time to

cure the alleged default as required by the applicable DOTs.

127.     In addition, a review of the Declaration of Compliance attached to Plaintiffs' NOD

reveals that it was neither accurate nor complete. First, it was not executed by Caliber, the

then loan servicer, on behalf of the then purported owner of the loan, U.S. Bank Trust. Instead,

the declaration was executed back in 2014 by Ocwen, the predecessor servicer to Caliber, and

was executed not on behalf of U.S. Bank Trust, but on behalf of another entity altogether, the

Christina Trust. See Exhibit. 2014 NOD. Second, this declaration was executed in connection

with and as support for a wholly separate and prior NOD that was recorded by Ocwen. The

recording of the present NOD by Caliber was required to be accurate and complete, and supported by competent and reliable evidence. Caliber also had to comply with the provisions contained within Civil Code section 2923.55. They did neither. On information and belief, the Declarations of Compliance attached to the NOD's of borrower is likewise inaccurate and/or incomplete.

128.	Caliber and U.S. Bank Trust cannot support the 2017 NOD with an almost three (3) year old declaration executed by a different servicing entity on behalf of a different purported owner. Nor can Caliber and support the current NOD with an almost three (3) year old declaration. There is no basis for the Trustee's attestation or any possible way that the loan servicer, Caliber, fulfilled its obligations under Civil Code § 2923.55, and Civil Code Section 2924.17. For these reasons, the recording of the 2017 NOD by Caliber on behalf of U.S. Bank Trust was on its face void and invalid. Despite these serial and material HBOR violations, and despite the lack of competent and reliable evidence, Defendants nevertheless proceeded to record the NOD. On information and belief, these activities were conducted on borrower.

129.	Although required to do so prior to recording a notice of default, Caliber failed to provide Plaintiff with notice of his right to request a copy of the promissory note, the deed of trust, all assignments of the deed of trust and a copy of the payment history on the loan. Nor did Caliber attempt to contact the Plaintiff to assess their financial condition as required to be attested to in the Declarations in support of the NODs.

130.	Plaintiff alleges 2014 NOD(11/21/2014) is still valid and Defendants failed to record Notice of Rescission of 2014 NOD, thus NOD (May 2017) void and Trustee's Sale in 2017 was Void. Therefore Trustee's Deed Upon Sale (TDUS) is void. On November 21, 2014, a Notice of Default("NOD") was recorded against the property. In California, a Notice of

Default does not expire. The Notice of Default would be active until a Notice of Rescission or a Reconveyance is recorded. Notice of Rescission of Second NOD was not recorded against the property until Trustee's Sale. Therefore foreclosure action (2014 NOD) was pending against Doo Ko in 2017. 2017 NOD & 2017 NOT is void because 2014 NOD was pending in 2017. Plaintiff alleges Beneficiary in NOD(November 2014) is Christina Trust. Plaintiff alleges NOD(November 2014) still valid. Thus wrong entity (U.S. Bank Trust) foreclosed in 2017.

131.    Further, based upon information and belief loan servicers, such as Caliber and/or Ocwen, of residential mortgages that are collateral for residential mortgage backed securitized trusts (RMBS) such as Plaintiff herein, as well as in some cases for loans that are held for whole loan investors, are required under the terms of the related servicing agreements to make servicer advances. These servicer advances provide continuity of payment to the investors and preserve the related collateral. Servicer advances typically cover, with respect to each mortgage, principal and interest payments on the underlying mortgages, property taxes and assessments and property insurance premiums. As a result of these servicer advances by parties unrelated to the underlying loan agreement, Plaintiff's obligations under the Promissory Note and the Deed of Trust have been met to the securitized trusts purportedly owning his loans and as such he is not and was not in default of their loan obligations. Accordingly, the filing of Notices of Default and the initiation of foreclosure proceedings on Plaintiff's loans subject to such servicer advances are invalid.

132.    Defendants' actions as alleged herein constitute material violations of the HBOR and were carried out by Defendants intentionally, recklessly or were the result of willful misconduct by Defendants. Defendants admitted that there were gaps in the chain of title and

were aware that there was a myriad of other problems, which made were at odds with the requirement that they have competent and reliable evidence. Additionally, had Defendants reviewed competent and reliable evidence before recording the NOD, they would have seen the errors and irregularities in the documents and ownership and would have recognized they did not have the legal right or standing to take the actions they took. They would have also realized that they had not complied with the provisions of Civil Code section 2923.55 and accordingly lacked the ability to record the NOD, or issue the Notice of Trustee's Sale with respect to the Property. On information and belief, these actions were conducted on Plaintiff.

133.     Plaintiff is informed and believes, and based thereon alleges Defendants are not the holders of the notes and deeds of trust and are not operating under a valid power from the current holders of the notes and deeds of trust, Defendants did not have the right to proceed with the foregoing foreclosures.

134.     Plaintiff alleges that Defendants have no right, title, or interest in his deed of trust or his real property; thus, a controversy exists Defendants are alleged to have used false statements contained within recorded instruments as fully alleged herein.

135.     Plaintiffs are informed and believe, and based thereon allege Defendants' Instruments as being forgeries.

136.     The burden of proving an assignment falls upon the party asserting rights thereunder. In an action by an assignee to enforce an assigned right the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue, but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee.

137.    Defendants have unlawfully invoked Cal. Civ. Code § 2924 for non-judicial

foreclosure by using or relying upon known forgeries in recorded instruments and without

contractual or lawful authority.

138.    Under the Uniform Commercial Code, a negotiable instrument, such as a promissory

note secured by a mortgage, may only be enforced by the holder or a person with the rights of

a holder. Com. Code §3-301. For instruments payable to an identified person, such as a lender,

a holder is generally recognized as the payee or one to whom the negotiable instrument has

been negotiated. This requires transfer of possession and endorsement by the prior holder.

Com. Code §3-201. Unless the parties otherwise provide, the mortgage follows the note. Cal.

Civ. Code §2936.

139.    Though in California, the assignment of a note generally carries with it an assignment

of the mortgage, it is still required in California that the holder of the note or a person

operating with authority from that holder be the foreclosing party and that the mortgage not

have been assigned away from that note.

140.    Defendants no longer own the notes it originated and there is just no way of knowing

who now owns the Plaintiffs' mortgages because the Defendants do not know who owns these

mortgages. Indeed, the Defendants do not know where it is that they obtained their alleged

rights to collect money from Plaintiffs thereunder.

141.    Once separated from the note, the trust deed is unenforceable and of no legal value.

For negotiable instruments payable to an identified person, such as a lender, a holder is

generally recognized as the payee or one to whom the negotiable instrument has been

negotiated. This requires transfer of possession and endorsement by the prior holder. (Com.

Code §3-201). Unless the parties otherwise provide, the mortgage follows the note. (Civ. Code §2936; see also Carpenter v. Longan(1872) 83 U.S. 271, 275).

142.     Cal. Civil Code §2936 provides: "the assignment of a debt secured by mortgage carries with it the security." Defendants have no evidence that they own the notes or have any power to enforce them from the rightful owners.

143.     Plaintiff has sufficiently alleged and incorporated herein that the recorded Assignment of Deed of Trust(2015-2016), Substitution of Trustee(2016), Notice of Trustee Sale(2017), Notice of Default(2017), and any other recorded documents contain false statements that were memorialized by Defendants against the interests of Plaintiffs.

144.     Plaintiff alleges Defendants had a duty of care to verify all facts contained in those instruments but failed to fulfill those duties.

145.     Defendants acted repeatedly to violate Plaintiff's rights under California law as alleged herein, despite repeated attempts by Plaintiff to request legally required documentation from Defendants and Defendants repeatedly refuse to provide documentation, affidavits, and/or otherwise to prove authority, status, and/or rights to foreclose on Plaintiff.

146.     Defendants acted outrageously and persistently with actual malice in performing the acts alleged in this cause of action. Accordingly, Plaintiff is entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

147.     Plaintiff has suffered actual economic damages as a direct and proximate result of Defendants' misconduct. Accordingly, Plaintiff is entitled to all relief provided by the HBOR, including legal fees. See Cal. Civ. Code § 2924.12(I). In addition, Plaintiff is entitled to injunctive relief pursuant to Section 2924.12(a)(2), with said injunction remaining in place

until such time as the Defendants have corrected and remedied the various violations of the HBOR as set forth herein. On information and belief, these actions were conducted on Plaintiff. 2912.12 authorizes action to enjoin foreclosure, or for damages after foreclosure, for breaches of sections 2923.55 or 2924.17.

148.    Consequently, Defendants engaged in a fraudulent foreclosure of the Subject Property in that Defendants did not have the legal authority to foreclose on the Subject Property and, alternatively, if they had the legal authority, they failed to comply with Civil Code Section 2923.5 and 2923.6, etc.

149.    The Foreclosure was defective as such the Property must be restored to Plaintiff and/or Plaintiff is entitled to the value of thereof.

150.    As a direct and proximate result, Plaintiff lost his home and inflicted great emotional distress and suffering on Plaintiff. Plaintiff is entitled to actual and statutory damages, plus reasonable legal fees and costs of suit, an amount to be proven at trial. As a direct result of U.S. Bank Trust and Doe Defendants' illegal/wrongful conduct, Plaintiff was injured and damaged in that they were. As a legal and proximate cause of defendants acts, plaintiff has suffered injury in an amount subject to proof

## EXCEPTION TO THE TENDER RULE

No tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face. A tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale. A tender will not be required when the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary. If the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt. A tender will not be required when there are allegations of fraud and/or the trustee's sale was void.

# SECOND CAUSE OF ACTION

## FRAUD

### (Against U.S. Bank Trust; Caliber and DOES 1 through 10)

151.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the actions contained in all prior paragraph of this complaint.

152.     Plaintiff alleges that Defendants, and each of them, have represented to plaintiffs and to third parties that they were the owner of the Trust Deed and Note as either the Trustee or the Beneficiary regarding Plaintiffs real property. Based on this representation they caused a Notice of Default to be issued and recorded without disclosing their true role, and thereafter a notice of intent to foreclose and finally they executed a foreclosure, which was completed, permanently affecting Plaintiff's right, title and interest in the Subject Property. In fact, Plaintiff alleges that the promissory notes which was executed by Plaintiff and which initially formed a basis of a security interest in the subject property, was assigned in violation of Civil Code section 2932.5 et seq. because the assignment was not recorded, and as such the promissory note was rendered as non-negotiable and no power of sale was conveyed with the note at the time of the assignment, and therefore, Defendants, and each of them, had no lawful security interest in the subject property.

153.     Plaintiff is informed and believes that Defendants, and each of them, at the time of execution of the Deed of Trust and Note maintained an interest in the Subject Property, however at the time the Note and Deed of Trust were assigned to Defendant U.S. Bank Trust, the Note was no longer negotiable and the power of sale was not conveyed during the assignment, notwithstanding the foregoing, Defendants, and each of them, foreclosed on

Plaintiffs' Trust Deed, in concert with their scheme to defraud Plaintiff out of their property. Plaintiff has recently learned that Defendants, and each of them, are not the legal owners of the Note and TRUST DEED and was not at the time they issued the notices and commenced the foreclosure process, notwithstanding the fact that the note was not negotiable and did not contain a valid power of sale.

154.    Plaintiff alleges that Defendants, and each of them, knew at the time they made these representations to Plaintiffs that they were untrue, and defendants know at the time that they were attempting to foreclose on Plaintiffs' Trust Deeds and notes that they had no right to do so.

155.    Plaintiff alleges Defendants, and each of them, intentionally and fraudulently converted Plaintiffs' right, title and interest to their property, and any equity therein. By Assigning Deed of Trust, BOA to U.S. Bank Trust was Fraud because non-disclosure of Assignment of DOT to Plaintiff within 30 days.

156.    All Defendants violated Plaintiff's right of having equity, title and possession of the property herein.

157.    Plaintiff is still holder of the title of the property herein and Defendants do not have any title nor has any possession of the property herein.

158.    Caliber, orally and in writing, represented to Plaintiff that his home would not be foreclosed during the time that a loan modification, dispute letter was being reviewed for the first trust deed and during the time that the written Forbearance Agreement was in effect. As set forth above, the oral representations were made by various employees of Caliber who were employed in the Loan Mitigation Division.

159.     Caliber failed to disclose to Plaintiff that it was taking the position that the Forbearance Agreement never went into effect and was null and void as a result of her first payment being late. Moreover, Caliber failed to disclose to Plaintiff that the Forbearance Agreement was completely worthless as Caliber intended to foreclose on the DOT regardless of the Agreement. Furthermore, Caliber fraudulently treated the FDOT and SDOT as though they were being serviced and held by two separate entities so as to confuse and mislead Plaintiff who believed that Caliber was Caliber whenever he communicated with it.

160.     Plaintiff further alleges that defendants misrepresented about foreclosure sale. . Plaintiff alleges Caliber told Plaintiff's Property "No Trustee's Sale will take place in September 2017. Plaintiff also alleges Caliber and U.S. Bank Stated Plaintiff's Property "No Trustee's Sale has been taken place" in October 30, 2017. Plaintiff alleges that Defendants, and each of them, knew at the time they made these representations to Plaintiffs that they were untrue, and defendants know at the time that they were attempting to foreclose on Plaintiffs' Trust Deeds and notes that they had no right to do so.

161.     The representations of Caliber were false and fraudulent as Caliber caused a trustee's sale to be scheduled on September 25, 2017, without Plaintiff's knowledge. Even Attorney for Caliber and U.S. bank stated "No Trustee's Sale has been taken place." in October 30, 2017. This was misrepresentation.

162.     Although Plaintiff had numerous communications with Caliber prior to September 25, 2017, Caliber never disclosed to Plaintiff that the Subject Property would be sold at a trustee's sale on that date. Caliber   intentionally made the representations as part of Caliber's pattern and practice to deceive borrower's such as Plaintiff into relying to their detriment so that Caliber could foreclose on homes before borrower's could seek other remedies or options.

The exact same thing happened to Plaintiff. Plaintiff justifiably relied on the oral and written representations of Caliber and Caliber's written Forbearance Agreement that no foreclosure would take place during the loan modification and/or forbearance process and did not seek other remedies or pursue other options. As a proximate result of Caliber's fraudulent misrepresentations, Plaintiff lost his home and inflicted great emotional distress and suffering on Plaintiff.

163.    Relying upon Caliber's promise that there was no foreclosure sale, and that there would not be foreclosure sale date pending its review of Plaintiff's Loan Modification and dispute letter. Caliber and other Defendants knew that this representation was false and misleading. Defendants made these misrepresentations and concealed these facts.

164.    Even through September 2017, Plaintiff was ensured by Caliber that the review is on going and no foreclosure would proceed. By foreclosing on the property after making misrepresentations and false promises, Defendants deprived Plaintiff other options to save home or avoid foreclosure.

165.    Accordingly, as a result of Caliber's fraudulent conduct, Plaintiff has suffered, and will continue to suffer, compensatory, general and special damages in an amount to proof. Additionally, Caliber acted with malice, fraud and/or oppression and, thus, Plaintiff is entitled to an award of punitive damages.

166.    On 4/16/15, A Void Assignment of DOT was recorded. The Assignment was void because (1) it reflected Ocwen was Christina Trust's Attorney in fact when no power of attorney was recorded in orange county appointing Ocwen as Christina Trust's attorney in fact (2) Vicki Pospisil, a known robo-signer, signed the document for Ocwen. Vicki Pospisil is also known robo-notary.

167.     Since April 2015 Assignment of DOT was void. Assignment of DOT to U.S. Bank Trust is void because of broken chain of title. Then November 2016 Substitution of Trustee was also void because U.S. Bank Trust did not have a beneficial interest in the deed of trust, substituted Quality as trustee. U.S. Bank Trust did not purchase the deed of trust. Even if U.S. Bank Trust purchased the Deed of Trust, Substitution of Trustee still void because (1) it reflected Caliber was U.S. Bank Trust's Attorney in fact when no power of attorney was recorded in orange county appointing Caliber as U.S. Bank Trust's attorney in fact. (2) Arturo Zarazua, a possible robo-signer, signed the Substitution of Trustee for U.S. Bank Trust or Caliber. There's no power of attorney attached indicating Arturo Zarazua had the authority for Caliber to execute 2016 substitution of trustee on behalf of U.S. Bank trust.

168.     In Substitution of Trustee(11/1/2016), the signer did not provide the required information to sign a document in signature block such as name of the person signing the document and the capacity in which the person is signing in signature block and the date on which the document was signed. The date on which the contract should be included to show the contract's effective date. The signature was not dated in signature block. The proper signature should include name, title and the name of the organization. Since companies cannot sign for themselves, this signature identifies the person signing, the title and authority of the person, and the name of the contracting party. If signing on behalf of a business, they must provide title. But U.S. Bank Trust did not indicate signer's name & the signer's title underneath signature.

169.     The signer on TDUS for Quality Loan servicing is a Dorian Bradley as Assistant Secretary, but this name is not in the employee generated system of Quality Loan Servicing when Plaintiff Called. Plaintiff suspects this is another robo signer of the documents who has

many hats within the entities. There's was no perfected standing for U.S. Bank Trust and this is critical issue because the Trust has standing to foreclose if, and only if it is the mortgagee. If the notes and mortgage were not transferred to the trust, then trust lacks standing to foreclose.

170.    One of the biggest mistakes in document signatures is having the wrong person sign the document. Individuals who sign contracts on behalf of a legal entity should be careful to indicate the capacity in which they are signing. Defendants also should be sure they have authority to sign.

171.    As a direct result of Defendants' fraud, fraudulent misrepresentations and omissions, Plaintiff has suffered and continues to suffer damages, the exact amount of which will be proven at trial.

172.    On information and belief, Ocwen obtained all of the loan files and related documentation from BOA, including those related to Plaintiffs' loan.

173.    As alleged herein, Plaintiffs sent multiple QWRs to Ocwen during the time Ocwen was acting as the servicer of the loan.

174.    Although legally obligated to do so, Ocwen failed and refused to provide full and complete responses to the QWRs, including but not limited to its failure to provide documentation evidencing any endorsements and transfers of the Note.

175.    Ocwen, by failing and refusing to provide the endorsements as required under law (something Plaintiffs could not have discovered on their own and did not know of), knowingly and intentionally concealed the deficiencies and errors in the chain of title from Plaintiffs.

176. Had Ocwen been forthcoming and provided Plaintiffs with the documentation it was legally required to provide in response to the QWRs, Plaintiffs would have behaved differently with respect to the loan and the attempts being made to collect upon it and foreclose upon the property it secured. Ocwen's concealment of the true facts precluded and negatively impacted Plaintiffs' ability to ascertain who may have had adverse ownership claims to the Property or interests in the Note and DOT and, in turn, prevented, impeded and inhibited Plaintiffs from communicating with the appropriate parties about resolution of issues surrounding the loan and the Property.

177. It was reasonably foreseeable to Ocwen (which was in the loan servicing business) that the flawed endorsements on the note would be used and relied upon by others. Indeed, these endorsements have been relied upon by, among others, Defendant Caliber which relied on the endorsements in order to record, on behalf of its beneficiary, a Notice of Default in the Orange County Recorder's Office as a foundational step in the non-judicial foreclosure process.

178. By its actions herein, Ocwen intended to deceive not only Plaintiffs but everyone else relying upon the validity of the endorsements, chain of title and the recorded documents in the Orange County Recorder's Office.

179. Accordingly, as result of Defendants' fraudulent conduct and fraudulent misrepresentations, Plaintiff lost his home and inflicted great emotional distress and suffering on Plaintiff. As a direct and proximate result, Plaintiffs have suffered damages in an amount to be proven at trial, including reasonable legal fees and costs. Plaintiff has further suffered equitable harm for which legal damages are insufficient.

180.     Plaintiff alleges that due to their reliance on Defendants representations he has been damaged in an amount that currently exceeds $1,000,000.

181.     Additionally, Plaintiff has been made to suffer deep and severe emotional distress mortification, anxiety and humiliation all to their damage and injury in an amount the totality of which has not yet been fully ascertained, but in no event less than the jurisdiction limitations of this court.

182.     Defendants' conduct as set forth above was intentional, oppressive fraudulent and malicious so as to justify an award of punitive damages in an amount sufficient that such conduct will not be repeated.

**THIRD CAUSE OF ACTION**

**INJUNCTIVE RELIEF**

**(Against U.S. Bank Trust; Caliber and DOES 1 through 10)**

183.     Plaintiff re-alleges and incorporates by this reference all of the allegations of the proceeding paragraphs as though fully set forth herein.

184.     Plaintiff will suffer great irreparable injury if the Defendants, are not restrained and enjoined by Order of this Court from taking any action which has the effect of , or in fact does, result in the sale and /or transfer of title to a good faith third party buyer/individual or entity or taking possession of the Property.

185.     Plaintiff is informed and believes and thereon alleges that the Defendants and/or Does 1-10, each intend to proceed or are proceeding with the eviction of Plaintiff as the non-judicial foreclosure of the Property has taken Place. Unless the Defendants, and/or Does 1-20, and anyone acting in concert with them or on their behalf, are enjoined and restrained from proceeding with the eviction of Plaintiff and family from the Property and selling the Property

to a good faith third party buyer, or taking possession of the Property, Plaintiff will suffer irreparable harm, in that there will not have been a determination of Plaintiff's rights and ownership in and as to the Property prior to such sale and/or transfer, such that the Property will be sold free and clear of Plaintiff's rights and ownership in the Property.

186.    Defendants do not have standing or enforceable right to enforce the note and any incidental right to collateral so as to foreclose on Plaintiffs' Home, including without limitation, conducting a trustee's sale relative to that property.

187.    Any such action would result in a new cause of action for "wrongful foreclosure," cause irreparable harm to Plaintiff, and will cause pecuniary compensation which will not afford adequate relief because Plaintiff's Home is unique.

188.    Injunctive relief is necessary to enjoin Defendants from foreclosing upon Plaintiff's Home since they lack standing and any enforceable rights under the Promissory Note.Defendants should be required to provide the original note with the appropriate indorsements thereon to Plaintiffs or this Honorable Court so that it may determine under California law, who owns the right to receive payments on the loan and exercises the rights relating to said ownership.

189.    Plaintiff is informed and believes and thereon alleges that this injunctive relief is necessary until the Court can make a determination on the claims asserted by Plaintiff in this Complaint, including, without limitation, Plaintiff's request for declaratory relief, quiet title, cancellation of written instruments, and other equitable relief.

**FOURTH CAUSE OF ACTION**

**TEMPORARY RESTRAING ORDER, PRELIMINARY AND PERMANET INJUCTION**

**(Against U.S. Bank Trust; Caliber and DOES 1 through 10)**

190.    Plaintiff re-alleges and incorporates by this reference all of the allegations of the proceeding paragraphs as though fully set forth herein.

191.    Plaintiff requests a temporary restraining order and preliminary and permanent injunctive preventing Defendants, and each of them, from doing the act set forth above, pending further Order and/or transfer of the Property is allowed to proceed.

192.    There is a prospective and imminent lock out date. The unlimited court has granted a stay to allow Plaintiff to seek other remedies and possible writ. The Unlawful Detainer Case should be stayed because of pending wrongful foreclosure lawsuit. Current Unlawful Detainer Case should be stayed because Assignment of Deed of Trust, Substitution of Trustee, Notice of Trustee's Sale and Trustee's Deed Upon Sale were void. Unlawful Detainer Case should be stayed until Defendants can prove All Assignment of Deed of Trust, Substitution of Trustee(2016), NOD(2106), Notice of Trustee's Sale(2017) and Trustee's Deed Upon Sale(2017) are valid. The injunctive relief is necessary and appropriate at this time to prevent irreparable injury and the loss of Plaintiff's home. An injunctive is further appropriate to prevent a fraudulent foreclosure and subsequent eviction based fraud and non-compliance with 2923.5, to the detriment of Plaintiff and his family.

193.    Plaintiff disputes the amount in dispute alleged to be owed and request that the court order an accounting. Plaintiff requires that the books be made available. The exact amount alleged to be owed cannot be determined without an accounting and further discovery.

194.    Plaintiff would like either a certified public accountant, or similarly qualified representative, to audit the books and records.

## FIFTH CAUSE OF ACTION

## DECLARATORY RELIEF

**(Against U.S. Bank Trust; Caliber and DOES 1 through 10)**

195.  Plaintiff re-alleges and incorporates by this reference all of the allegations of the proceeding paragraphs as though fully set forth herein.

196.  An actual controversy exists in which the parties must ascertain their rights, duties and right to title in the Subject Property.

197.  A judicial determination is necessary that the parties may ascertain their rights, duties and right to title in the Subject Property.

198.  The parties desire that the court may a judicial determination as to their rights, duties and right to title in the Subject Property.

199.  An actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them, concerning their respective rights, obligations and duties as it relates to the Subject Property.

200.  Plaintiff contends that pursuant to the loans, Defendants do not have authority to foreclose upon and sell the property.

201.  Plaintiff is informed and believes and upon that basis alleges that Defendants dispute Plaintiff's contention and instead they may properly foreclose upon the property.

202.  Plaintiff requests that the court declare that Plaintiff was the victim of the Predatory Lending Practices and wrongful foreclosure, perpetrated by defendants and each of them upon Plaintiff.

203.  Plaintiff requests a determination of the validity of the Trust Deeds as of the date the Notes were assigned without a concurrent assignation of the underlying Trust Deeds.

204.  Plaintiff requests a determination of validity of the 2017 NOD (Notice of Default).

205.    Plaintiff requests a determination of whether any Defendant has authority to foreclose on the Property.

206.    That the foreclosure was wrong. That the Defendants violated laws. That the parties' execution of the substituted trustee violated California State Statute CC 2924f and CC 2934 (a) requiring that the substituted trustee failed to properly executed the notice of substation in accordance with state law.

207.    That defendants as nominee beneficiary and each of them have failed to show that they are the holders of the original note and deed of trust in effectuating or authorizing action sufficient to satisfy both state and federal standing requirements, in re:.Real Parties In Interest pursuant to California Code of Civil Procedure Section 367. We ask that the court declare that the contract should be rescinded and that such contract was void.

208.    Plaintiff desires a judicial determination of Defendants rights, obligations and duties, and a declaration as to who owns Plaintiff's Subject Property.

## SIXTH CAUSE OF ACTION

## VIOLATION IF BUSINESS AND PROFESSION CODE SECTION 17200

### (Against U.S. Bank Trust; Caliber and DOES 1 through 10)

209.    Plaintiffs reallege and incorporate by reference the above paragraphs as set forth fully herein.

210.    California's Unfair Competition Law (UCL) prohibits any unfair competition defined as any "unlawful, unfair, or fraudulent business act or practice." Bus. & Prof. Code § 17200. Defendants have engaged in unlawful business practices as described above and herein, by conducting business practices that are unlawful.

211.    Defendants' acts alleged herein are unfair insofar as they intentionally failed to

properly notify Plaintiffs of their rights to dispute an alleged default per the signed Deed of

Trust, California law, and California public policy, cure the alleged default in a timely manner,

notify and allow Plaintiff to seek legally permissible alternatives to foreclosure, and wrongful

foreclosure. Plaintiff was forced to watch as Defendants claimed rights to issue Notices of

Default, Notices of Sale, and authority to sell Plaintiff's respective property.

212.    Defendants' acts are unfair insofar as they failed to record Substitutions of Trustee,

not only for Plaintiff, but for a large part of the general public, as required by the Deed of

Trust, California law, and California public policy. This failure deceives both Plaintiffs and

the general public as to the identity of the true Trustee and/or true holder of the note.

213.    Defendants' acts are unfair insofar as they failed to notify Plaintiffs of the acceleration

of Plaintiff's debt as required by the Deed of Trust, California law, and California public

policy, not only for Plaintiff, but for many individuals in the general public, as this is standard

practice for Defendants.

214.    Defendants unfairly held themselves out as having proper authority to file publicly

recorded documents and foreclose on Plaintiff's property. Although Plaintiffs relied on this

apparent authority, Plaintiffs and the general public were ignorant of the fact that Defendants

did not own the notes and were not lawful agents, beneficiaries, or trustees for the true and

legal owner of the note.

215.    Consequently, Plaintiff unfortunately relied on this improper authority. Defendants

acted fraudulently in a manner that was likely to not only deceive Plaintiffs, but was likely to

deceive the general public, including but not limited to making material misrepresentations or

omissions, knowingly filing false instruments for the general public to view, knowingly filing

false instruments without required declarations, failing to properly notify Plaintiff of  the

rights to dispute alleged defaults and wrongful foreclosure in a manner that constitutes

fraudulent business acts and practices as prohibited by Cal. Bus. & Prof. Code § 17200, et.

seq.

216.    Defendants unlawfully filed public documents including Notices of Default and

Notices of Trustee's Sale without the authority to do so as the Defendants were not owners of

the note or lawful trustees, beneficiaries, or agents for the true and legal owner of the note at

the time of filing.

217.    Defendants fraudulently continued this scheme of filing false documents and

attempting to sell property in order to profit, knowing their actions were illegal, unfair, and

fraudulent but acting with complete disregard to Plaintiffs, along with numerous homeowners

throughout California.

218.    Defendants violated various state laws. These violations are standard practice for

Defendants and are intended to deceive and harm Plaintiffs and the general public.

219.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to

enjoin Defendants from continuing its "unlawful, unfair, and/or fraudulent business act or

practices" and to restore Plaintiffs any money and/or property which Defendants acquired by

such unfair competition under California Business & Professions Code Section 17200, et. seq.

220.    Plaintiff Suffered Damages As A Result of Defendants' Conduct. As a direct result of

Defendants' acts, Plaintiffs have incurred actual damages consisting of mental and emotional

distress, nervousness, grief, embarrassment, loss of sleep, anxiety, worry, mortification, shock,

humiliation, indignity, pain and suffering, and other injuries.

221.     Plaintiffs incurred out of pocket monetary damages. Plaintiffs continue to incur monetary damages. Plaintiffs will incur the loss of his personal residence if a non-judicial foreclosure is allowed to proceed.

222.     Each of Defendants harassing acts were so willful, vexatious, outrageous, oppressive, and maliciously calculated enough, so as to warrant statutory penalties and punitive damages.

## SEVEN CAUSE OF ACTION

## WRONGFUL EVICTION

### (Against U.S. Bank Trust; Caliber and DOES 1 through 10)

223.     On or about August 20, 2018, U.S. BANK TRUST, N.A. filed Unlawful Detainer complaint. Plaintiff alleges Defendants wrongfully filed eviction action and attempted to evict Plaintiff and other tenants.Plaintiff alleges U.S. Bank Trust's Deed(TDUS) was void. U.S. Bank Trust is not real owner. Plaintiff alleges U.S. Bank Trust lacks capacity to sue or file eviction action against Doo Ko and other tenants. Plaintiff alleges U.S. Bank Trust's eviction action was wrongful. Plaintiff suffered from this wrongful and illegal eviction. Actual damages include damage to Plaintiff's property. Damages include money Plaintiff spent because of the illegal eviction, such as paying for legal document fees, etc. They may also include damages for the emotional stress and embarrassment

224.     As approximate result of Defendants' violation of laws, Plaintiff suffered, and will continue to suffer, general and special damages in an amount according to proof at trial.

Wherefore Plaintiff prays for judgment as set forth below.

1. Injunctive relief;

2. That this court adjudge and decree that the sale of the subject proper on September 25, 2017 is null, void and no force or effect;

3. For an Order setting aside the foreclosure sale of the Property;

4. For Compensatory damages in the amount of $10,000,000.00 for each cause of action or for Compensatory damages in an amount to be proven at trial for all causes of actions;

5. Statutory damages and civil penalties;

6. For punitive damages in an amount in excess $10,000,000.00;

7. Treble damages;

8. For any statutory damages according to law;

9. For Declaratory and Injunctive Relief including the issuance of a restraining order and there after a preliminary injunction to maintain the status quo pending final adjudication;

10. For Attorney fees in the event that counsel is retained;

11. For such further and other relief as the Court deems just and proper.


Dated: October 9, 2019


Respectfully submitted,



Doo M. Ko

1

## VERIFICATION OF DOO KO

2

3

     I, Doo Ko am the petitioners in this action. All facts alleged in the above petition, not otherwise

4

supported by citations to the record, exhibits or other documents, are true of our own personal

5

knowledge.

6

     I declare under penalty of perjury under the laws of the State of California that the foregoing is

7

true and correct.

8

                          Respectfully submitted,

9

Dated: October 9, 2019

10

11

                          DOO M. KO

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1

## EXHIBIT "A"

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 42 OF TRACT NO. 16135, IN THE CITY OF FULLERTON, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP ("MAP") RECORDED IN BOOK 825, PAGES 12 TO 18 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM A/AN 50% INTEREST IN ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, ALL OTHER HYDROCARBON SUBSTANCES BY WHATSOEVER NAME KNOWN, AND ALL RIGHTS THERETO, WITHOUT HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING BENEATH A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED BY DEED RECORDED.

EXCEPTING THEREFROM A/AN 50% INTEREST IN ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, ALL OTHER HYDROCARBON SUBSTANCES BY WHATSOEVER NAME KNOWN, AND ALL RIGHTS THERETO, WITHOUT HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING BENEATH A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED BY DEED RECORDED.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, DRAINAGE, ENCROACHMENT, MAINTENANCE AND REPAIR, ALL AS MAY BE SHOWN ON THE MAP AND AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR AMERIGE HEIGHTS ("MASTER DECLARATION"), RECORDED JUNE 21, 2002, AS INSTRUMENT NO. 02-522398, AND THE NOTICE OF ADDITION OF PHASE AND SUPPLEMENTAL MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATIONS OF EASEMENTS FOR AMERIGE HEIGHTS TALMEDGE, PHASE 10 LOTS 41 THROUGH 46, INCLUSIVE, 90, 95, 109 AND MASTER COMMON AREA LOTS E, F, G, H, I, J AND K OF TRACT NO, 16135, AND LOT B OF TRACT NO. 16205) RECORDED JULY 1, 2003, AS INSTRUMENT NO. 03-775473 ("NOTICE OF ADDITION"), BOTH OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 3:

EXCLUSIVE USE EASEMENT FOR SIDEYARD PURPOSES, AS APPLICABLE, AS DESCRIBED AND ASSIGNED IN THE MASTER DECLARATION.

End of Legal Description

Exhibit 2

Stewart Title

Recording Requested By:
BANK OF AMERICA

Return To:
LOAN #
FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256

*370312867*

Recorded In Official Records, Orange County

Tom Daly, Clerk-Recorder

**78.00**

**2007000427193 08:00am 07/09/07**

200 28 D11 25

0.00 0.00 0.00 0.00 72.00 0.00 0.00 0.00

*880 331 67*

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST      LOAN #

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated      JULY 02, 2007
together with all Riders to this document.
**(B) "Borrower"** is DOO M. KO, An Unmarried Man

Borrower's address is      100 S. ALAMEDA STREET # 375, LOS ANGELES, CA  90012

. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of   THE UNITED STATES OF AMERICA

**CALIFORNIA** – Single Family

Page 1 of 15

**BS6(CA)** (0207)     VMP Mortgage Solutions (800)521-7291
    CVCA 07/02/07 9:31 AM

Lender's address is 275 S.VALENCIA AVE. 1ST FLOOR, BREA, CA 928236340

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is  PRLAP, INC.

**(E) "Note"** means the promissory note signed by Borrower and dated  JULY 02, 2007
The Note states that Borrower owes Lender EIGHT HUNDRED THIRTY TWO THOUSAND AND
00/100                                                                                      Dollars
(U.S. $      832,000.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  AUGUST 01, 2037
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [X] Planned Unit Development Rider    [ ] Other(s) [specify]
[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

**BS6(CA)** (0207)

CVCA 07/02/07 9:31 AM

Page 2 of 15

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of ORANGE :

        [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
"SEE ATTACHED EXHIBIT A."

Parcel ID Number: 280-331-67                        which currently has the address of
2244 SHAPIRO STREET                                                            [Street]
FULLERTON                                          [City] , California 93833    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

**BS6(CA)** (0207)
CVCA 07/02/07 9:31 AM ████              Page 3 of 15

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

**BS6(CA)** (0207)
CVCA 07/02/07 9:31 AM

Page 5 of 15

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

**BS6(CA)** (0207)
CVCA 07/02/07 9:31 AM

Page 6 of 15

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

**8S6(CA)** (0207)

CVCA 07/02/07 9:31 AM

Page 8 of 15

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

8S6(CA) (0207)

CVCA 07/02/07 9:31 AM

Page 9 of 15

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

BS6(CA)   (0207)

CVCA 07/02/07 9:31 AM ▅▅▅▅

Page 12 of 15

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

Document Number: 2007000427193 Page: 13 of 25

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Doo M. Ko by Stephen Ko. Stephen Ko, as his attorney in fact_
_____ (Seal)
DOO M. KO                                                                    -Borrower

_____ (Seal)
                                                                                     -Borrower

_____ (Seal)          _____ (Seal)
                                                      -Borrower                                                                     -Borrower

_____ (Seal)          _____ (Seal)
                                                      -Borrower                                                                     -Borrower

_____ (Seal)          _____ (Seal)
                                                      -Borrower                                                                     -Borrower

BS6(CA)  (0207)                                    Page 14 of 15
CVCA 07/02/07 9:31 AM  ▮▮▮▮▮▮

Document Number: 2007000427193 Page: 14 of 25

State of California
County of  Los Angeles                                      } ss.

On  July 3, 2007          before me,  Sora Nam, Notary Public
                                                              personally appeared

Stephen Ko

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ (Seal)





**BS6(CA)** (0207)                                Page 15 of 15
CVCA 07/02/07 9:31 AM  ▮▮▮▮▮

LOAN #  ██████

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this   2ND    day of  JULY, 2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note")
to  BANK OF AMERICA, N.A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: 2244 SHAPIRO STREET, FULLERTON, CA  93833

(Property Address)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE
INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN
THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      7.250        %. The Note
provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the  FIRST  day of AUGUST, 2012
, and on that day every    12TH      month thereafter. Each date on which my
interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is:

**MULTISTATE ADJUSTABLE RATE RIDER** – Single Family    MGNR 07/02/07 9:31 AM  ████
Page 1 of 6
**BS899R** (0402)      VMP Mortgage Solutions, Inc. (800)521-7291

THE ONE-YEAR LONDON INTERBANK OFFERED RATE ("LIBOR") WHICH IS THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE-YEAR U.S. DOLLAR-DENOMINATED DEPOSITS IN THE LONDON MARKET, AS PUBLISHED IN THE WALL STREET JOURNAL. THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE "CURRENT INDEX."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   TWO AND ONE-QUARTER                                                    percentage points (     2.250             %) to the Current Index. The Note Holder will then round the result of this addition to the ☐ Nearest ☒ Next Highest ☐ Next Lowest ONE-EIGHTH OF ONE PERCENTAGE POINT              (          0.125              %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

☒ **Interest-Only Period**

The "Interest-only Period" is the period from the date of this Note through AUGUST 01 , 2017      . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

**( Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes .)**

☐ (1) There will be no maximum limit on interest rate changes.

☐ (2) The interest rate I am required to pay at the first Change Date will not be greater than                    % or less than                    %.

☐ (3) My interest rate will never be increased or decreased on any single Change Date by more than                    percentage points (                    %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than 12.250                    %, which is called the "Maximum Rate."

☐ (5) My interest rate will never be less than                    %, which is called the "Minimum Rate."

☐ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than       12.250       % or less than       2.250       %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   TWO                    percentage points (       2.000       %) from the rate of interest I have been paying for the preceding period.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BS899R (0402)          Page 3 of 6          MGNR 07/02/07 9:31 AM

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:
    (1) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B(2) BELOW SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of the title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(2) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER. AS USED IN THIS SECTION 18, "INTEREST IN THE PROPERTY" MEANS ANY LEGAL OR BENEFICIAL INTEREST IN THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THOSE BENEFICIAL INTERESTS TRANSFERRED IN A BOND FOR DEED, CONTRACT FOR DEED, INSTALLMENT SALES CONTRACT OR ESCROW AGREEMENT, THE INTENT OF WHICH IS THE TRANSFER OF TITLE BY BORROWER AT A FUTURE DATE TO A PURCHASER.

IF ALL OR ANY PART OF THE PROPERTY OR ANY INTEREST IN THE PROPERTY IS SOLD OR TRANSFERRED (OR IF BORROWER IS NOT A NATURAL PERSON AND A BENEFICIAL INTEREST IN BORROWER IS SOLD OR TRANSFERRED) WITHOUT LENDER'S PRIOR WRITTEN CONSENT, LENDER MAY REQUIRE IMMEDIATE PAYMENT IN FULL OF ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. HOWEVER, THIS OPTION SHALL NOT BE EXERCISED BY LENDER IF EXERCISE IS PROHIBITED BY APPLICABLE LAW.

IF LENDER EXERCISES THIS OPTION, LENDER SHALL GIVE BORROWER NOTICE OF ACCELERATION. THE NOTICE SHALL PROVIDE A PERIOD OF NOT LESS THAN 30 DAYS FROM THE DATE THE NOTICE IS GIVEN IN ACCORDANCE WITH SECTION 15 WITHIN WHICH BORROWER MUST PAY ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. IF BORROWER FAILS TO PAY THESE SUMS PRIOR TO THE EXPIRATION OF THIS PERIOD, LENDER MAY INVOKE ANY REMEDIES PERMITTED BY THIS SECURITY INSTRUMENT WITHOUT FURTHER NOTICE OR DEMAND ON BORROWER.

370312867

### EXHIBIT "A"

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 42 OF TRACT NO. 16135, IN THE CITY OF FULLERTON, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP ("MAP") RECORDED IN BOOK 825, PAGES 12 TO 18 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM A/AN 50% INTEREST IN ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, ALL OTHER HYDROCARBON SUBSTANCES BY WHATSOEVER NAME KNOWN, AND ALL RIGHTS THERETO, WITHOUT HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING BENEATH A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED BY DEED RECORDED.

EXCEPTING THEREFROM A/AN 50% INTEREST IN ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, ALL OTHER HYDROCARBON SUBSTANCES BY WHATSOEVER NAME KNOWN, AND ALL RIGHTS THERETO, WITHOUT HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING BENEATH A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED BY DEED RECORDED.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, DRAINAGE, ENCROACHMENT, MAINTENANCE AND REPAIR, ALL AS MAY BE SHOWN ON THE MAP AND AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR AMERIGE HEIGHTS ("MASTER DECLARATION"), RECORDED JUNE 21, 2002, AS INSTRUMENT NO. 02-522398, AND THE NOTICE OF ADDITION OF PHASE AND SUPPLEMENTAL MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATIONS OF EASEMENTS FOR AMERIGE HEIGHTS TALMEDGE, PHASE 10 LOTS 41 THROUGH 46, INCLUSIVE, 90, 95, 109 AND MASTER COMMON AREA LOTS E, F, G, H, I, J AND K OF TRACT NO, 16135, AND LOT B OF TRACT NO. 16205) RECORDED JULY 1, 2003, AS INSTRUMENT NO. 03-775473 ("NOTICE OF ADDITION"), BOTH OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 3:

EXCLUSIVE USE EASEMENT FOR SIDEYARD PURPOSES, AS APPLICABLE, AS DESCRIBED AND ASSIGNED IN THE MASTER DECLARATION.

End of Legal Description

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Doo M. Ko by Stephen Ko. Stepl LKo, as his attorney in fact_ _____ (Seal)
DOO M. KO                                                                           –Borrower

_____ (Seal)
                                                                          –Borrower

_____ (Seal)
                                                                          –Borrower

_____ (Seal)
 –Borrower

_____ (Seal)
 –Borrower

_____ (Seal)
 –Borrower

_____ (Seal)
 –Borrower

_____ (Seal)
 –Borrower

**BS899R (0402)**            **Page 6 of 6**         MGNR 07/02/07 9:31 AM

LOAN #

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this                 2ND        day of
JULY, 2007                        , and is incorporated into and shall be deemed to amend
and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure
Borrower's Note to

BANK OF AMERICA, N.A.

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at:
2244 SHAPIRO STREET, FULLERTON, CA 93833

(Property Address)
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
*** COVENANTS, CONDITIONS, AND RESTRICTIONS ***

(the "Declaration"). The Property is a part of a planned unit development known as

AMERIGO HEIGHTS
(Name of Planned Unit Development)
(the "PUD"). The Property also includes Borrower's interest in the homeowners
association or equivalent entity owning or managing the common areas and facilities of
the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's
interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii)
articles of incorporation, trust instrument or any equivalent document which creates the
Owners Association; and (iii) any by-laws or other rules or regulations of the
OwnersAssociation. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.

**MULTISTATE  PUD  RIDER** - Single Family

**BS7R** (0411)

Page 1 of 3                M07P 07/02/07 9:31 AM
VMP Mortgage Solutions, Inc. (800)521-7291

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BS7R (04 1 1)                      **Page 2 of 3**            M07P 07/02/07 9:31 AM

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

*For MK a by Stephanto. Steph Ka, as his attorney in fit* (Seal)
DOO M. K̈O                                                                    –Borrower

_____ (Seal)
                                                                          –Borrower

_____ (Seal)
                                                                          –Borrower

_____ (Seal)
                                                                          –Borrower

_____ (Seal)
                                                                          –Borrower

_____ (Seal)
                                                                          –Borrower

_____ (Seal)
                                                                          –Borrower

_____ (Seal)
                                                                          –Borrower

**BS7R** (04 1 1)                        Page 3 of 3                M07P 07/02/07 9:31 AM

Exhibit 3

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

Recording Requested By and When Recorded
Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

79356308

9.00
* S R 0 0 0 6 7 2 0 2 8 7 $ *

2014000202958 8:00 am 05/27/14
66 401 A32 F13  1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

# Assignment of Deed of Trust

Loan:

Dated: **May 22, 2014**

For value received **Bank of America, N.A., by Indecomm Global Services its attorney in fact, 7105 Corporate Drive, Plano, TX 75024,** the undersigned hereby grants, assigns and transfers to **Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 3, In c/o Altisource Asset Management Corporation, 402 Strand St, Frederiksted, VI 00820,** all beneficial interest under a certain Deed of Trust dated **July 2, 2007** executed by **DOO M KO, AN UNMARRIED MAN** and recorded in Book **XX** on Page(s) **XX** as Document Number **2007000427193 on July 9, 2007 in the office of the County Recorder of Orange County, California.**

Bank of America, N.A., by Indecomm Global Services its
attorney in fact,

By: _____

**Yu Yee Vang,**
**Assistant Secretary**

STATE OF **Minnesota**                  )

COUNTY   **Ramsey**                     ) SS

*U04684309*

On this, the **22nd** day of **May** , **2014** , before me the undersigned officer, personally appeared **Yu Yee Vang** who acknowledged himself or herself to be the **Assistant Secretary** of **Indecomm Global Services its attorney in fact for Bank of America, N.A.** , and that he or she as such **Assistant Secretary** , being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself or herself as **Assistant Secretary** .

In witness whereof, I here unto set my hand and official seal.

Prepared By:
Lisa Spurbeck
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

**Bao Cindy Fang, Notary Public**
My Commission expires: **January 31, 2017**

BAO CINDY FANG
Notary Public-Minnesota
My Commission Expires Jan 31, 2017

Exhibit 4

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

9.00

\* S R 0 0 0 6 8 2 0 0 0 9 $ \*

**2014000274135 9:17 am 07/10/14**

217 402 A32 F13   1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Recording Requested By and When Recorded
Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117
29433723

## *Corrective **Assignment of Deed of Trust**

Dated: **July 8, 2014**                                                                                Loan: ▓▓▓▓

For value received **Bank of America, N.A., by Indecomm Global Services its attorney in fact, 7105 Corporate Drive, Plano, TX 75024**, the undersigned hereby grants, assigns and transfers to **Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 4, In c/o Altisource Asset Management Corporation, 402 Strand St, Frederiksted, VI 00820**, all beneficial interest under a certain Deed of Trust dated **July 2, 2007** executed by **DOO M KO, AN UNMARRIED MAN** and recorded in Book **XX** on Page(s) **XX** as Document Number **2007000427193** on **July 9, 2007** in the office of the County Recorder of Orange County, California.

Bank of America, N.A., by Indecomm Global Services its attorney in fact

By: _____

**Bao Cindy Fang,
Vice President**

STATE OF **Minnesota**                    )

COUNTY   **Ramsey**                       ) SS

*To correct the assignee name on assignment dated 5/22/2014 and recorded on 5/27/2014 under Doc# 2014000202958.

*U04776086*

On this, the **8th** day of **July , 2014** , before me the undersigned officer, personally appeared **Bao Cindy Fang** who acknowledged himself or herself to be the **Vice President of Indecomm Global Services its attorney in fact for Bank of America, N.A.** , and that he or she as such **Vice President** , being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself or herself as **Vice President** .

In witness whereof, I here unto set my hand and official seal.

Prepared By:
Lisa Spurbeck
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

Pang Mee Yang, Notary Public
My Commission expires: **January 31, 2017**

PANG MEE YANG
Notary Public-Minnesota
My Commission Expires Jan 31, 2017

Exhibit 5

RECORDING REQUESTED BY:
Premium Title of California

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

||||||||||||||||||||||||||||||||||||||||||||||||||| 12.00
* S R 0 0 0 7 0 2 7 1 5 2 $ *
2014000415401 9:58 am 10/14/14
105 409 S15 F13   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

AND WHEN RECORDED MAIL TO:
Western Progressive, LLC
2002 Summit Blvd, Suite 600
Atlanta, GA 30319

SPACE ABOVE THIS LINE

FOR RECORDER'S USE
TS No.: 2014-03030-CA        55713097649644

## SUBSTITUTION OF TRUSTEE

    **WHEREAS, DOO M. KO, An Unmarried Man** was the original Trustor, **PRLAP, INC.** was the original Trustee, and BANK OF AMERICA, N.A., A NATIONAL BANKING ASSOCIATION was the original Beneficiary under that certain Deed of Trust dated **07/02/2007** and recorded on 07/09/2007 as Instrument No. **2007000427193**, in book —, page --- of Official Records of **Orange County**, California, and

    **WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

    **WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

    **NOW, THEREFORE,** the undersigned hereby substitutes **Western Progressive, LLC, 2002 Summit Blvd, Suite 600, Atlanta, GA 30319** as Trustee under said Deed of Trust.

TS No.: 2014-03030-CA    55713097649644

     Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 9/26/14

**Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 4, By Ocwen Loan Servicing, LLC Its Attorney In Fact**

**Matthew Owens**   Contract Management Coordinator

State of Florida } ss.
County of Palm Beach }

The foregoing instrument was acknowledged and sworn before me this ___26___ day of ___September___, 2014, by ___Matthew Owens___ as ___Contract Management Coordinator___ of Ocwen Loan Servicing, LLC., who is personally known to me or who has produced _____ as identification.



Krystle Hernandez
Notary Public-State of Florida
My Commission Expires: 12/2/2017

Notary Public State of Florida
Krystle Hernandez
My Commission FF 073846
Expires 12/02/2017

Exhibit 6

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

||||||||||||||||||||||||||||||||||||||||||||| 18.00
* $ R 0 0 0 7 1 1 1 7 3 3 $ *
2014000502000 8:26 am 11/21/14
217 402 N15 F13   4
0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
Premium Title of California

WHEN RECORDED MAIL TO:

Western Progressive, LLC
Northpark Town Center
1000 Abernathy Rd NE; Bldg 400, Suite 200
Atlanta, GA 30328

Loan No.: █████████

TS No. 2014-03030-CA
APN No.:280-331-67

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

### PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐAY LA BAN TRINH BAY TOM LƯỢC VE THONG TIN TRONG TAI LIEU NAY

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **551,905.94** as of **10/31/2014, and** will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your

TS:2014-03030-CA

account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**Ocwen Loan Servicing, LLC Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 4 By Ocwen Loan Servicing, LLC, its attorney in-fact**

### C/O Western Progressive, LLC

30 Corporate Park, Suite 450
Irvine, California 92606
Phone: 877-596-8580

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.'

NOTICE IS HEREBY GIVEN: That Western Progressive, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 07/02/2007, executed by, **DOO M. KO, An Unmarried Man**, as Trustor, to secure certain obligations in favor of BANK OF AMERICA, N.A., A NATIONAL BANKING ASSOCIATION, recorded 07/09/2007 , as Instrument No. 2007000427193, in Book ---, Page --- , of Official Records in the Office of the Recorder of Orange County, **California** describing land therein as: **As more particularly described on said Deed of Trust.**

Street Address or other common designation of real property:

**2244 SHAPIRO STREET, FULLERTON, CA 93833**

The subject obligation includes **ONE NOTE(S) FOR THE ORIGINAL** sum of 832,000.00. A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

TS:2014-03030-CA

**Installment of interest only payments which became due on 05/01/2008 plus late charges if any, and all subsequent interest, advances, late charges and foreclosure fees and costs that become payable.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

**Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.**

That by reason thereof, the present beneficiary under such deed of trust, has delivered to said duly appointed Trustee, a written request to commence foreclosure, and has deposited with said duly appointed Trustee, a copy of the deed of trust and other documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.
"See Attached Declaration"

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING. YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

**1. The mortgage servicer contacted the borrower to assess the borrower`s financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code 2923.55. Thirty days, or more, have passed since the initial contact was made.**

**Dated: November 17, 2014**

Western Progressive, LLC, as agent for beneficiary
C/O 30 Corporate Park Suite 450
Irvine, CA 92606
Beneficiary Phone: 877/596-8580

Tamika Y. Smith, Trustee Sale Assistant

TS:2014-03030-CA

## California Declaration of Compliance
### (Civ. Code § 2923.55(c))

Borrower(s):   Doo M Ko
Loan No.: ▪

The undersigned declares as follows:

      I am employed by the undersigned mortgage servicer, and I have reviewed its business records for the borrower's loan, including the borrower's loan status and loan information, to substantiate the borrower's present loan default and the right to foreclose. The information set forth herein is accurate, complete and supported by competent and reliable evidence that I have reviewed in the mortgage servicer's business records. Those records reflect *one* of the following.

☑     The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55. Thirty days, or more, have passed since the initial contact was made.

☐     The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

☐     The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the individual does not meet the definition of a "borrower" under Civil Code §2920.5(c).

☐     The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan on "owner-occupied" residential real property as defined by California Civil Code § 2924.15(a)

Signed and Dated:

By: Ocwen Loan Servicing, LLC, as Servicer for Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 4

Matthew Owens      Contract Management Coordinator

Print Name           Signature            Date

At-24110

Exhibit 7

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401

**Recorded in Official Records, Orange County**
**Hugh Nguyen, Clerk-Recorder**

12.00

*$ R 0 0 0 7 4 5 0 7 5 0 $ *
**2015000196356 3:13 pm 04/16/15**
**276 423 A32 F13   2**
**0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00**

---

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Orange, California
SELLER'S SERVICING #:7130976496 "KO"
SELLER'S LENDER ID#: DW SCI
OLD SERVICING #: 870332189

Prepared By: Karen Smith, OCWEN LOAN SERVICING, LLC 240 TECHNOLOGY DRIVE, IDAHO FALLS, ID 83401 800-746-2936

For Value Received, Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 4 by it's attorney in fact Ocwen Loan Servicing, LLC  hereby grants, assigns and transfers to WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2 at C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL  33409 all its interest under that certain Deed of Trust dated 07/02/2007 , in the amount of $832,000.00, executed by DOO M. KO, AN UNMARRIED MAN to BANK OF AMERICA  N.A. and Recorded:  07/09/2007  as Instrument No.: 2007000427193 in the County of Orange, State of California.

Property Address: 2244 SHAPIRO STREET, FULLERTON, CA  93833

In witness whereof this instrument is executed.

  Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 4 by it's attorney in fact Ocwen Loan Servicing, LLC  POA: 01/15/2015  as Instrument No.: 2015000025058
On ____ MAR 1 9 2015

_____, Authorized
**Vicki Forgan**
Signer

'NVS'NVSGMAC'03/18/2015 12:59.46 PM' GMAC40GMACA00000000000004502952' CAORANG' 7130976496 CASTATE_TRUST_ASSIGN_ASSN 'KS'KS1GMAC'

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF _____ **Iowa**
COUNTY OF _____ **Black Hawk**

On __**MAR 1 9 2015**__ before me, _____**MARY KAMMEYER**_____, a Notary Public in and for ___**Black Hawk**___ in the State of _____**Iowa**_____, personally appeared _____**Vicki Popplehf**_____, Authorized Signer, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

**MARY KAMMEYER**
Notary Expires **10/20/17**

```
MARY KAMMEYER
COMMISSION NO.766592
MY COMMISSION EXPIRES
OCTOBER 28, 2017
```

(This area for notarial seal)

*NVS*NVSGMAC*03/18/2015 12:59:46 PM* GMAC40GMACA00000000000000004502952* CAORANG* 7130976496 CASTATE_TRUST_ASSIGN_ASSN *KS*KS1GMAC*

Exhibit 8

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

*$R0008752596$*

2016000492086 2:35 pm 10/07/16

47 NC-5 A30 F13  1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

9.00

Recording Requested by:
M. E. Wileman

PLEASE FORWARD RECORDED
DOCUMENT TO AND PREPARED BY:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

## Assignment of Deed of Trust

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2** 1110 Strand Street, Suite 2A, Christiansted, VI 00820 (Assignor) by these presents does assign and set over, without recourse, to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST** 13801 Wireless Way, Oklahoma City, OK 73134 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by **DOO M. KO, AN UNMARRIED MAN** to **BANK OF AMERICA, N.A.**. Trustee: PRLAP, INC Said deed of trust Dated: 7/2/2007 is recorded in the State of CA, County of Orange on 7/9/2007, Instrument # 2007000427193 AMOUNT: $ 832,000.00     Property Address: 2244 SHAPIRO STREET, FULLERTON, CA 93833

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed as a sealed instrument by its proper officer.  Executed on:  ___AUG 1 1 2016___
WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2
By Caliber Home Loans, Inc. Its Attorney in Fact

By: _____

Martha Ellis, Senior Vice President

KO  OFG8  *16071572*

State of Oklahoma
County of Oklahoma
     Before me, Nancy Ortiz, Notary Public, personally appeared, Martha Ellis, Senior Vice President known to me to be the person(s) whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office on  AUG 1 1 2016

Notary public, Nancy Ortiz
My commission expires: September 29, 2016

CA  Orange
Document Number: 2016000492086 Page: 1 of 1

CALIBER/JULY11/SFR

# Exhibit 9

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

|| || ||| ||| | ||||| ||| || ||| |||| ||| |||| ||| 12.00
* S R 0 0 0 8 8 1 7 6 8 9 $ *
**2016000540640 2:54 pm 11/01/16**
47 NC-5 S15 F13  2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Recording requested by:

When recorded mail to:

Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101
619-645-7711

TS No.: CA-16-736290-AB
APN. No.: 280-331-67

Space above this line for recorders use

# Substitution of Trustee

WHEREAS, **DOO M. KO, AN UNMARRIED MAN** was the original Trustor, **PRLAP, INC.** was the original Trustee, and **BANK OF AMERICA, N.A** was the original Beneficiary under that certain Deed of Trust dated **7/2/2007** and recorded on **7/9/2007** as Instrument No. 2007000427193    of Official Records of **ORANGE** County, **CA**; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes **QUALITY LOAN SERVICE CORPORATION** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

TS No.: **CA-16-736290-AB**
Page 2

**U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, by Caliber Home Loans, Inc., as its attorney in fact**

By:_____

## ACKNOWLEDGMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of the document.

State of California
County of San Diego)

On _____ before me, Courtney Patania, Notary Public
OCT 1 7 2016
(Insert name and title of the officer)
Personally appeared Arturo Zarazua, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

Signature _____
Courtney Patania Notary Public

COURTNEY PATANIA
Commission # 2044156
Notary Public - California
San Diego County
My Comm. Expires Nov 1, 2017

Exhibit 10

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 18.00
* S R 0 0 0 9 2 7 8 4 6 0 S *
**2017000202339** 3:26 pm 05/17/17
105 410 N15 F13   4
0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

TS No.: **CA-17-770718-AB**
Order No.: **170187408-CA-VOI**
APN No.: **280-331-67**

Space above this line for Recorder's use

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE
COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code § 2923.3)

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice). This amount is **$614,587.70** as of **5/16/2017** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in

TS No.: **CA-17-770718-AB**

writing prior to the time the notice of sale is posted (which may not be earlier than three-months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust**
**C/O Quality Loan Service Corporation**
**411 Ivy Street**
**San Diego, CA 92101**
**619-645-7711**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 7/2/2007, executed by **DOO M. KO , AN UNMARRIED MAN**, as Trustor, to secure certain obligations in favor of **BANK OF AMERICA, N.A.**, as beneficiary, recorded 7/9/2007, as Instrument No. **2007000427193**,        of Official Records in the Office of the Recorder of **ORANGE** County, **California** describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including **1 NOTE(S) FOR THE ORIGINAL** sum of **$832,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The installments of principal and interest which became due on 5/1/2008, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.**

TS No.: **CA-17-770718-AB**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Pursuant to the attached Declaration, the mortgage servicer declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.55 or § 2923.5, or is otherwise exempt from the requirements of § 2923.55 and §2923.5.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Dated:  **MAY 1 6 2017**

Quality Loan Service Corp., Trustee

By: Stephanie Fuentes, Assistant Secretary

**California Declaration of Compliance**
(Civ. Code § 2923.55(c))

Borrower(s): Doo M Ko
Loan No.: ▮▮▮▮▮▮▮

The undersigned declares as follows:

I am employed by the undersigned mortgage servicer, and I have reviewed its business records for the borrower's loan, including the borrower's loan status and loan information, to substantiate the borrower's present loan default and the right to foreclose. The information set forth herein is accurate, complete and supported by competent and reliable evidence that I have reviewed in the mortgage servicer's business records. Those records reflect *one* of the following.

☑ The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55. Thirty days, or more, have passed since the initial contact was made.

☐ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

☐ The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the individual does not meet the definition of a "borrower" under Civil Code §2920.5(c).

☐ The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan on "owner-occupied" residential real property as defined by California Civil Code § 2924.15(a)

Signed and Dated:

By: Ocwen Loan Servicing, LLC, as Servicer for Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 4

Matthew Owens    Contract Management Coordinator
Print Name

_[signature]_    4/17/14
Signature    Date

At-24110

Exhibit 11

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

||||||||||||||||||||||||||||||||||||||||||||||   12.00
* S R 0 0 0 9 5 0 7 4 2 1 $ *
**2017000356258 2:20 pm 08/22/17**
105 406 N34 F13   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

---

TS No. **CA-17-770718-AB**

Order No.: **170187408-CA-VOI**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

---

# NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE
COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code 2923.3)

注: 本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 7/2/2007. UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn
by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings
association, or savings bank specified in Section 5102 to the Financial Code and authorized to do business in this
state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or
implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by
the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the
Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the
initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on
the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):   **DOO M. KO , AN UNMARRIED MAN**
Recorded:     7/9/2007 as Instrument No. 2007000427193    of Official Records in the office of the
              Recorder of **ORANGE** County, California;

Date of Sale:  **9/25/2017 at 1:30PM**
Place of Sale: **At the North front entrance to the County Courthouse located at 700 Civic Center Drive
               West, Santa Ana, CA 92701**

Amount of unpaid balance and other charges: **$1,425,255.30**
The purported property address is:    **2244 SHAPIRO STREET, FULLERTON, CA 92833**
Assessor's Parcel No.: **280-331-67**

---

Document Number: 2017000356258 Page: 1 of 2

TS No.: CA-17-770718-AB

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 916-939-0772 for information regarding the trustee's sale or visit this Internet Web site http://www.qualityloan.com, using the file number assigned to this foreclosure by the Trustee: CA-17-770718-AB. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall be entitled only to a return of the monies paid to the Trustee. This shall be the Purchaser's sole and exclusive remedy. The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Date: **AUG 21 2017**

**Quality Loan Service Corporation**
411 Ivy Street
San Diego, CA 92101
619-645-7711 For NON SALE information only
Sale Line: 916-939-0772
Or Login to: http://www.qualityloan.com
Reinstatement Line: (866) 645-7711 Ext 5318

Quality Loan Service Corp. by: Daisy Rios, Assistant Secretary

Exhibit 12

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

15.00

* S R 0 0 0 9 6 0 9 4 5 7 S *
2017000423314 3:21 pm 10/04/17
47 NC-5 T09 F13  3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

Recording requested by:

And when recorded mail to:

Caliber Home Loans
Attention: Collateral Team
13801 Wireless Way
Oklahoma City, OK 73134-2500

Forward tax statements to the address given above

TS No.: CA-17-770718-AB
Order No.: 170187408-CA-VOI

Space above this line for recorders use

# Trustee's Deed Upon Sale

A.P.N.: 280-331-67

Exempt pursuant to Cal Rev and Tax Code §11926

THE UNDERSIGNED GRANTOR DECLARES:
The Grantee Herein IS the Foreclosing Beneficiary
The amount of the unpaid debt together with costs was:                    $1,425,631.44
The amount paid by the grantee at the trustee sale was:                   $1,425,631.44
The documentary transfer tax is:                                          NONE
Said property is in the City of: FULLERTON, County of ORANGE

QUALITY LOAN SERVICE CORPORATION , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby GRANT and CONVEY to

U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of ORANGE, State of California, described as follows:

PARCEL 1:  LOT 42 OF TRACT NO. 16135, IN THE CITY OF FULLERTON, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP ("MAP") RECORDED IN BOOK 825, PAGES 12 TO 18 INCLUSIVE OF MISCELLANEOUS MAPS,  RECORDS OF ORANGE COUNTY, CALIFORNIA. EXCEPTING THEREFROM A/AN 50% INTEREST IN ALL OIL, OIL RIGHTS, NATURAL GAS
When recorded mail and send tax statement to:
Caliber Home Loans
Attention: Collateral Team
13801 Wireless Way
Oklahoma City, OK 73134-2500

THIS INSTRUMENT IS RECORDED AT THE
REQUEST  OF  SERVICELINK  AS  AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

EXHIBIT B

TS No.: CA-17-770718-AB

RIGHTS, MINERAL RIGHTS, ALL OTHER HYDROCARBON SUBSTANCES BY WHATSOEVER NAME KNOWN, AND ALL RIGHTS THERETO, WITHOUT HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING BENEATH A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED BY DEED RECORDED. EXCEPTING THEREFROM A/AN 50% INTEREST IN ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, ALL OTHER HYDROCARBON SUBSTANCES BY WHATSOEVER NAME KNOWN, AND ALL RIGHTS THERETO, WITHOUT HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING BENEATH A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED BY DEED RECORDED. PARCEL 2: NON-EXCLUSIVE EASEMENTS FOR ACCESS, DRAINAGE, ENCROACHMENT, MAINTENANCE AND REPAIR, ALL AS MAY BE SHOWN ON THE MAP AND AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR AMERIGE HEIGHTS ("MASTER DECLARATION"), RECORDED JUNE 21, 2002, AS INSTRUMENT NO. 02-522398, AND THE NOTICE OF ADDITION OF PHASE AND SUPPLEMENTAL MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATIONS OF EASEMENTS FOR AMERIGE HEIGHTS TALMEDGE, PHASE 10 LOTS 41 THROUGH 46, INCLUSIVE, 90, 95, 109 AND MASTER COMMON AREA LOTS E, F, G, H, I, J AND K OF TRACT NO, 16135, AND LOT B OF TRACT NO. 16205) RECORDED JULY 1, 2003, AS INSTRUMENT NO. 03-775473 ("NOTICE OF ADDITION"), BOTH OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA. PARCEL 3: EXCLUSIVE USE EASEMENT FOR SIDEYARD PURPOSES, AS APPLICABLE, AS DESCRIBED AND ASSIGNED IN THE MASTER DECLARATION.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by DOO.M. KO , AN UNMARRIED MAN, as trustor, dated 7/2/2007, and recorded on 7/9/2007 as instrument number 2007000427193 of Official Records in the office of the Recorder of ORANGE, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on 5/17/2017, instrument no 2017000202339, Book XXX, Page XXX, of Official records. The Trustee of record at the relevant time having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten/thirty days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

Default occurred as set forth in a Notice of Breach and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Breach and Election to Sell or the personal delivery of the copy of the Notice of Breach and Election to Sell and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on 9/25/2017 at the place named in the Notice of Sale, in the County of ORANGE, California, in which the property is situated. The foreclosing beneficiary, being the highest at such sale, became the purchaser of said property and paid therefore to said trustee the amount being $1,425,631.44 in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust and instructed said trustee to vest this Trustee's Deed Upon Sale to said Grantee

*When recorded mail and send tax statement to:*
Caliber Home Loans
Attention: Collateral Team
13801 Wireless Way
Oklahoma City, OK 73134-2500

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

TS No.: CA-17-770718-AB

Date: _10 - 3 - 2017_

QUALITY LOAN SERVICE CORPORATION

By: Dorian Bradley, Assistant Secretary

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: Calliornia)

County of: San Diego)

On __OCT 0 3 2017__ before me, __Katherine A. Davis__ a notary public, personally appeared __Dorian Bradley__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                              (Seal)

Signature __Katherine A. Davis__

KATHERINE A. DAVIS
COMM. #2095368
Notary Public · California
San Diego County
My Comm. Expires Dec. 29, 2018